**UNITED STATES of America,**
**Appellant,**

v.

**INTERMOUNTAIN FURNITURE MAN-**
**UFACTURING COMPANY, Inc., a**
**Utah Corporation, Appellee.**

**No. 8453.**

United States Court of Appeals
Tenth Circuit.

July 27, 1966.

J. Edward Shillingburg, Atty., Dept. of Justice, Washington, D. C. (Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson, and I. Henry Kutz, Attys., Dept. of Justice, Washington, D. C., William T. Thurman, U. S. Atty., and Walker E. Anderson, Asst. U. S. Atty., Salt Lake City, Utah, of counsel, with him on the brief), for appellant.

A. M. Ferro and Dean W. Chipman, Salt Lake City, Utah, for appellee.

Before MURRAH, Chief Judge, SETH, Circuit Judge, and LANGLEY, District Judge.

SETH, Circuit Judge.

This is an action by the corporate taxpayer for a refund of income taxes which it asserts were erroneously assessed against it. The issue concerns deductions made by the taxpayer for the years 1958, 1959, and 1960, for what it claims to be payment of interest.

The issue concerns Section 163(a) of the Internal Revenue Code of 1954 which provides: "There shall be allowed as a deduction all interest paid or accrued within the taxable year on indebtedness." (26 U.S.C.A. § 163). The question is thus whether or not the payments made qualified as interest under the above section.

The record shows that the furniture manufacturing business commenced as a partnership, and that certain of the partnership assets were transferred to the corporation when it was organized some time in 1954. The assets transferred to the corporation consisted of a bank balance of $159.10, an inventory of something over $78,000, about $1,500 in prepaid insurance, some $7,300 in machinery and equipment at book value, and about $6,500 in trucks at book value, being a total of some $94,000. At the transfer the partnership retained all other cash and all accounts receivable. The corporation assumed partnership liabilities of about $76,000, including some notes due to the wives and children of the three corporate stockholders. The difference in the book value of assets transferred to the corporation (without good will)

and liabilities assumed by it was some $18,000. This difference was represented by 1,800 shares of stock of $10.00 par value. The corporation at the outset did a gross business of some $500,000 to $750,000, and had about forty employees. Stock was issued to the former partners and to their families. Following the incorporation and in fact commencing at the first meeting of the stockholders, the stockholders and their families began to "loan" additional funds to the corporation. These loans were obviously necessary by reason of the fact that the corporation had at the outset no bank balance or receivables, and no effective working capital. Initially the corporation also borrowed lesser amounts from a bank, as had the partnership. In 1958 the family advances were about $112,000 with a capital and surplus total of about $108,830.

◼ The issue tried was whether or not the "loans" made by the stockholders and their families to the corporation constituted indebtedness of the corporation or whether it was in fact an investment in the corporation.

The trial court entered judgment for the taxpayer in the amount claimed together with interest. The issue on this appeal is whether or not the trial court applied the correct rule of law as to the burden of proof. The appellant here urges that the incorrect rule was applied by the court, and we agree.

The court during the course of the trial made several rulings and references to the burden of proof. At the conclusion of the trial in an oral opinion the court indicated that it applied a burden of proof rule applicable to a fraud case. This oral opinion states in part:

"What you are charging these people with is having set up some phony arrangements to beat the tax collector. And where the charge is that kind of a thing I think you have to produce clear and convincing evidence.

"It is true that the taxpayer here has the burden of proof in the lawsuit, but I think the Government carries the burden of producing clear and convinc-

ing evidence that these arrangements were phony. And on the record that I heard here when we were taking the testimony I thought there was pretty good evidence about these matters, so I am going to decide this case in favor of the taxpayer. You prepare the findings and conclusions.

\*　　\*　　\*　　\*　　\*　　\*

" \* \* \* The opportunities for imposition upon the Government are great; and, because of that, they are looked upon with a jaundiced eye by the revenue agent—and properly so, properly so—but the Government certainly hasn't satisfied me by clear, convincing proof of the phony and fraudulent and tax-evasion character of this transaction."

◼ The court in the above quotation does state generally that the burden of proof is on the taxpayer but, in continuing, demonstrates that he placed the burden on the Government to prove by clear and convincing evidence that the arrangement and the notes were "phony" or "fraudulent." This is not the rule as to burden of proof which should be applied. The proper standards are set forth in McSorley's, Inc. v. United States, 323 F. 2d 900 (10th Cir.), and Crawford Drug Stores v. United States, 220 F.2d 292 (10th Cir.). It is not necessary to further describe the rule or to quote from these opinions. The taxpayer must introduce evidence to prove the specific amount of the claimed deduction and that the assessment is erroneous. Decker v. Korth, 219 F.2d 732 (10th Cir.).

◼ The appellee argued to this court on the basis of whether or not the notes themselves were genuine and urged that they were in the proper form, and that they were "standard printed commercial notes." This is not however the basic question. It is instead whether the substance of the arrangement as revealed by the entire transaction created a real indebtedness or was an investment in the equity of the enterprise. The details may be cast in the form of a debt, but the arrangement in its entirety may be otherwise.

The question as to whether a given transaction or arrangement created risk capital or whether it created indebtedness is basically a question of fact to be determined by the trial court from its analysis of the many factors and elements which make up the whole. Each case depends upon its particular facts.

It is clear that the Commissioner cannot dictate the proportion of equity to debt under these circumstances. Nassau Lens Co. v. Comm'r, 308 F.2d 39 (2d Cir.); Sherwood Memorial Gardens v. Comm'r, 350 F.2d 225 (7th Cir.).

We feel that the error in the application of the rule on the burden of proof is so fundamental that the case must be remanded to the trial court for a new trial. We have no way of knowing what rule was actually applied other than as indicated in the oral opinion, and this, as demonstrated, indicates the application of an erroneous rule.

Reversed and remanded for a new trial.