COMMISSIONER OF INTERNAL REV-
ENUE, Petitioner,

v.

Zelie BERENBAUM and Harriet
Berenbaum, Respondents.

No. 8561.

United States Court of Appeals
Tenth Circuit.

Dec. 2, 1966.

Jack S. Levin, Atty., Dept. of Justice, Washington, D. C. (Mitchell Rogovin, Asst. Atty. Gen., Meyer Rothwacks, Harry Baum, Anthony Zell Roisman and Lee A. Jackson, Attys., Dept. of Justice, with him on the brief), for petitioner.

Joseph Berenbaum, Denver, Colo., for respondents.

Before PICKETT and SETH, Circuit Judges, and CHRISTENSEN, District Judge.

SETH, Circuit Judge.

The Commissioner filed notices of deficiency against the taxpayer and others in connection with their income tax returns for 1959 and 1960. He determined that redemptions of preferred shares of stock in a closely held corporation from the taxpayer and others were essentially equivalent to the distribution of taxable dividends under § 302(b) (1) of the 1954 Internal Revenue Code.

The Tax Court considered the two redemptions and held that one was essentially equivalent to a dividend but that the other was not. The Commissioner is the petitioner here and seeks review of the decision of the Tax Court as to the redemption held not essentially equivalent to a dividend.

The general purpose of § 302(b) (1) of the 1954 Code is to tax distributions made by corporations to their stockholders in redemption of stock whenever such distributions or payments are essentially equivalent to a dividend. The

Code also provides that any distribution to a shareholder is assumed to be out of earnings and profits to the extent they exist.

The record shows that the corporation here concerned, National Real Estate & Management Co., was a family-owned corporation and before 1956 had one hundred shares of common stock outstanding. Eighty per cent of these shares were owned by the taxpayer and the remaining twenty per cent by his two brothers. In 1956 the corporation sought approval as an FHA mortgage company, but in order to qualify it was necessary that capitalization or net worth of the corporation be in excess of $100,000. To meet this requirement the company issued in that year heretofore authorized but unissued nonvoting preferred stock; 620 shares of this class of stock were issued for cancellation of purported indebtedness in the amount of about $38,000 which the books of the corporation showed owing to certain stockholders and a family partnership, and partly for an additional capital contribution of $14,000. Of these 620 shares, 425 shares were issued to the taxpayer and 195 to the family partnership. The minutes of the meeting of the directors which authorized the issuance of this stock recited that the corporation had the right to redeem such stock when its capitalization exceeded $100,000.

The company was thereafter approved as an FHA mortgage company and thereafter earnings were accumulated, but no dividends were paid on the preferred or the common stock. Some time in 1957 the company's net worth dropped below the FHA minimum requirement, and seventy additional preferred shares were issued to the taxpayer upon payment of the sum of $7,000 and forty additional shares to the family partnership for $4,000. Thus the taxpayer then owned eighty per cent of the common stock, and 495 of 730 shares of preferred stock of the corporation.

In January 1960 the corporate net worth including the preferred stock was over $139,000, and in that month the corporation redeemed one hundred shares

of preferred stock from the taxpayer for the sum of $10,000. This is the redemption in question here. The taxpayer did not report this receipt on his income tax return, and the Commissioner held that the redemption was essentially equivalent to a dividend and filed the deficiency notices. The Tax Court found otherwise and held that the distribution was not taxable as a dividend. The Tax Court in so deciding held that the percentage of ownership of the preferred stock was reduced in a sufficient amount by the redemption to justify its holding, and secondly that the taxpayer did not receive by the redemption of the preferred stock the amount he would have received had the corporation made a distribution of the same amount as a dividend on common stock. It appears that the Tax Court applied these two standards in reaching its decision. The Tax Court also found that no debts were owed in fact by the corporation to the recipients of the preferred stock to exchange for the issuance of such stock.

Prior to the 1960 redemption in question the corporation had redeemed forty preferred shares held by the family partnership.

The Commissioner here urges that the Tax Court was in error as a matter of law in the application of the standards it used in determining dividend equivalence in that the standards were too limited, and further that the standards used were erroneously applied.

In consideration of the standards to be applied, it should be borne in mind that the taxpayer at all pertinent times owned outright eighty per cent of the common stock of the corporation which was the only voting stock, and owned over seventy per cent of the preferred stock. It also appears that the taxpayer and his father and brothers owned all preferred and common stock of the corporation individually or through the family partnership composed of the taxpayer, his father, and two brothers. It should also be borne in mind that although the corporation had earnings and profits at various times, no dividends were ever paid by the corpora-

tion. Shortly before the 1960 redemption here in question, the accumulated corporate earnings and profits amounted to something more than $69,000, of which some $39,000 was available for dividend distribution without affecting the required $100,000 net worth. Earnings and profits in 1960 were substantial and the corporation continued to operate profitably, but did not declare a dividend thereafter.

This court in two cases has described the standards or tests to be used in examining corporate distributions of the general type here involved. The first of these cases is Jones v. Griffin, 216 F.2d 885 (10th Cir.), which concerned the section of the 1939 Code comparable to the section applicable here. The court then had before it the redemption of preferred stock of an unusual nature. These shares had a first lien on the assets of the corporation and had voting rights. There arose some disagreement among the stockholders, and it was not possible to secure bank financing unless the preferred shares with their lien priority were cancelled. All the preferred shares were redeemed and the corporation continued to operate thereafter apparently upon the same scale as before. As a result of the redemption, however, there was a substantial rearrangement of the position of the stockholders relative to control. A former controlling shareholder was reduced to a minority position, one shareholder was eliminated, and other substantial changes resulted. This court in Jones stated the criteria to be used in determining the issues now before us:

> " * * * But certain criteria are recognized for determining the question. These include the past record of the corporation in respect to the distribution of dividends, whether at the time of the distribution the corporation had large earnings and profits in excess of the distribution, whether any substantial change in the proportionate ownership and control of the corporation resulted from the distribution, whether the corporation manifested a

policy of contraction in its operations, whether the corporation continued to operate at a profit, and whether the transaction was initiated or motivated by the stockholders. * * * "

Applying the standards set forth in Jones to the facts in the case before us, it can be seen that the distribution here in issue is a distribution taxable as a dividend. (1) There had been no distribution of any dividend by National since its formation in 1948. (2) At the time of the 1959 and 1960 redemptions National had sufficient accumulated earnings to cover the redemption. (3) As a result of the 1960 redemption no substantial change in proportionate ownership or control of National occurred. The taxpayer's direct voting control of the common shares of National—eighty per cent—was unaffected by redemption of the preferred, and by application of the rules of attribution the taxpayer suffered only a slight reduction in his ownership of preferred shares. (4) National did not contract its operations after the redemption. (5) National has continued to operate at a profit; that is, there is no assertion by the taxpayer that National either contracted its operations or has not operated at a profit since the redemptions.

The second case in which this court has considered the problem is Sorem v. Comm'r of Internal Revenue, 334 F.2d 275 (10th Cir.). This case concerned a purchase of shares by a related corporation, but the same issues were present as in the case at bar, and the same Code section was applicable. In the Sorem case the court used what is generally referred to as the "net effect test"; that is, whether considering all the factors and circumstances of the case as a whole, the net effect of the transaction is that of a dividend. An additional factor considered by this court in reaching its decision in both the Jones and the Sorem cases was the business purpose of the redemption. See also Sullivan v. United States, 363 F.2d 724 (8th Cir.); Kerr v. Comm'r of Internal Revenue, 326 F.2d 225 (9th Cir.); Unit-

ed States v. Fewell, 255 F.2d 496 (5th Cir.); cf. Bradbury v. Comm'r of Internal Revenue, 298 F.2d 111 (1st Cir.). In the case at bar there was a corporate business purpose for issuance of the preferred shares, but no corporate business purpose for their redemption. Cf. Sullivan v. United States, supra; Tabery v. Comm'r of Internal Revenue, 354 F.2d 422 (9th Cir.); Ballenger v. United States, 301 F.2d 192 (4th Cir.).

It is apparent from the opinion of the Tax Court that consideration was given only to one or two of the relevant factors, and consequently an erroneous rule of law was applied. The Tax Court examined the transaction by using a hypothetical distribution of the amount in question to the common shareholders and compared, in terms of percentage of the amount paid, what the taxpayer would have received as a common stockholder with what he received as a preferred stockholder. The court then compared the taxpayer's percentage of ownership of preferred shares before the distribution, 76 per cent, with the percentage after redemption of 72.3 per cent. The Tax Court then said: "Therefore, it cannot be said that, as to Zelie [the taxpayer], the second redemption was either pro rata or resulted in no change in his rights of ownership as reflected by the preferred stock. Accordingly, we hold that the redemption of Zelie's 100 preferred shares did not result in the distribution to him of a taxable dividend."

■ Instead of limiting consideration to the pro rata factor (which is of questionable worth in a redemption of preferred shares), and to the change in ownership of preferred shares alone where the percentage ownership is large before and after the redemption, the solution to the question depends on an examination of all facts and circumstances underlying and surrounding the transaction in accordance with Jones v. Griffin, 216 F.2d 885 (10th Cir.), and Sorem v. Comm'r of Internal Revenue, 334 F.2d 275 (10th Cir.).

■ Reduction in control of the corporation is important if the reduction is significant. If there is no significant reduction in the taxpayer's control or ownership the distribution in redemption of stock savors of a dividend. See Bradbury v. Comm'r of Internal Revenue, 298 F.2d 111 (1st Cir.). Although there may be no significant reduction in the taxpayer's control or ownership of the corporation, the distribution may still be non-taxable as a dividend if an important corporate business purpose can be meaningfully separated from the taxpayer's interests, and where the redemption is the only solution to some urgent corporate problem. In Sorem v. Comm'r of Internal Revenue, supra, this court considered the reduction in voting control significant when subsequent to the transaction neither taxpayer could assert "negative" control, but would have to join with other shareholders. In the case at bar it appears the Tax Court erroneously applied the standards relative to the taxpayer's reduction of ownership and control, and found that it was sufficient to warrant non-dividend treatment. As a matter of law this was incorrect because there was no reduction in his control, and only an insignificant reduction in ownership represented by the redeemed preferred shares. Nor was there a corporate business purpose for the redemption.

■■ The taxpayer has argued that the redemption should not be considered essentially equivalent to a dividend because the preferred shares were issued in part to capitalize corporate indebtedness to the taxpayer and others with the understanding that the shares would be redeemed when the corporation's net worth exceeded $100,000. It is clear that the issue of the bona fides or validity of the alleged corporate indebtedness in the form of advances made by the taxpayer, other officers, and the family partnership was not developed at trial, although the Tax Court observes that this issue was placed in controversy by the pleadings. The record was stipulated and the taxpayer did not come forward with any additional evidence on the question; the court was compelled to find that the advances in question represented an equity

investment. Cf. Keefe v. Cote, 213 F.2d 651 (1st Cir.), where the bona fides of the corporation's indebtedness to the taxpayer was not in issue. The taxpayer had the burden. United States v. Intermountain Furniture Mfg. Co., 363 F.2d 554 (10th Cir.); Swan v. Comm'r of Internal Revenue, 355 F.2d 795 (6th Cir.).

 The Commissioner also argues that the Tax Court misapplied the rules of attribution set forth in § 318 of the 1954 Code in determining the percentage reduction of the taxpayer's preferred shares. The Tax Court concluded that the taxpayer suffered a reduction in ownership, actual and constructive, of 3.7 per cent as a result of the redemption here in question; that is, from 76 per cent to 72.3 per cent of the preferred shares. While the Tax Court properly attributed to the taxpayer 32.5 preferred shares owned by the family partnership, representing his one-sixth interest in the partnership (§ 318(a) (2) (A) of the 1954 Code), the Tax Court failed to attribute to the taxpayer the preferred shares deemed to be owned by the taxpayer's father. The taxpayer's father owned fifty per cent of the partnership, and under § 318(a) (2) (A) the father is considered to own fifty per cent of the preferred shares owned by the family partnership at the time of the redemption. Under § 318(a) (5) (A) the father was considered to actually own fifty per cent of the preferred shares owned by the family partnership, and the father's shares should thus have been included in the preferred shares attributed to the taxpayer under § 318(a) (1) (A). The Tax Court's computation of the taxpayer's actual and constructive ownership of the preferred shares omitted the father's shares. When the father's shares are included, the taxpayer's percentage reduction in actual and constructive ownership of preferred shares by the redemption was 1.6 per cent, not 3.7 per cent. This reduction from 90.5 per cent to 88.9 per cent ownership of preferred shares, with the taxpayer's ownership of the common shares and voting control un-

changed, is not significant. See Sorem v. Comm'r of Internal Revenue, 334 F.2d 275 (10th Cir.); cf. Bradbury v. Comm'r of Internal Revenue, 298 F.2d 111 (1st Cir.); Friend v. United States, 345 F.2d 761 (1st Cir.). The 1964 amendment to § 318 is not applicable under the facts described.

Reversed.