George L. COYLE, Jr., and The Charleston National Bank, a national banking association, Executors of the Estate of George L. Coyle and Lucy G. Coyle, Appellees,

v.

UNITED STATES of America, Appellant.

No. 11828.

United States Court of Appeals Fourth Circuit.

Argued Feb. 9, 1968.

Decided June 6, 1968.

Martin T. Goldblum, Atty., Department of Justice (Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson, Harry Baum, Attys., Department of Justice, and Milton J. Ferguson, U. S. Atty., on the brief), for appellant.

Robert S. Spilman, Jr., Charleston, W. Va. (Spilman, Thomas, Battle & Klostermeyer, Charleston, W. Va., on the brief), for appellees.

Before SOBELOFF, CRAVEN and BUTZNER, Circuit Judges.

SOBELOFF, Circuit Judge:

Our task in this tax refund case is to apply to a stipulated set of facts an unambiguous, if involved, network of statutes to determine whether the proceeds from a transfer of corporate stock are to be taxed as capital gains or ordinary income. The District Court ruled that money which the taxpayer received in exchange for the shares of a corporation he controlled to a corporation wholly owned by his sons should be treated as a capital gain. We disagree and reverse the judgment.

In 1958, taxpayer George L. Coyle, Sr. (now deceased) transferred 66 shares of Coyle & Richardson, Inc. [hereinafter referred to as C & R] to Coyle Realty Company [hereinafter referred to as Realty] for $19,800. Reporting a long term capital gain on this "sale," Coyle paid a tax computed at that rate on $9,900, which is the difference between the sale price and his basis in the stock. The Internal Revenue Service was of the view that the proceeds should be treated as a dividend and assessed the taxpayer an additional $7,181.90 plus interest. Having fully paid the assessment, taxpayer made timely claim for refund. The District Court granted the refund, but we conclude that it should be denied.

Before the transaction, the 688 outstanding shares of C & R were distributed in the following manner: taxpayer, 369; taxpayer's three sons, an aggregate of 288; taxpayer's wife, 1; O. M. Buck, 25; Julia Farley, 5.[1] Thus, taxpayer and his immediate family owned more than 95.6% of the corporation whose shares were sold. Realty, the acquiring corporation, was owned in equal parts by taxpayer's three sons, each holding 125 of the 375 outstanding shares. Although the taxpayer had once held one share of Realty, he had no stock in it when the transaction under inquiry took place.

The initial point of controversy is whether the purchase by Realty is to be treated as a sale or as a redemption. Section 304 of the Internal Revenue Code of 1954, 26 U.S.C. § 304, provides in pertinent part:

"(a) Treatment of certain stock purchases.—

(1) Acquisition by related corporation * * *.—

[I]f (A) one or more persons are in control of each of two corporations, and (B) in return for property, one of the corporations acquires stock in the other corporation from the person * * * so in control, then * * * such property *shall be treated as a distribution in redemption* of the stock of the corporation acquiring such stock. * * *" (Emphasis added.)

Control is defined in § 304(c) (1) as at least 50% of the combined voting power of all voting stock or at least 50% of the

---

1. Buck and Farley are unrelated to the Coyle family as far as the record shows. Their insignificant holdings in C & R play no part in this case.

total value of all classes of stock. For purposes of determining control, § 304(c) (2) specifically makes applicable the constructive ownership provisions of § 318, 26 U.S.C. § 318. Under that section, "[a]n individual shall be considered as owning the stock owned, directly or indirectly, by or for * * * his children * * *."

■ Thus, applying the statute literally, taxpayer was in control of both corporations and the acquisition from him by Realty of the C & R stock must be treated as a redemption. His control of C & R results from his actual ownership of 54% of its outstanding stock, not to mention the attribution to him of his sons' 40%. He had 100% control of Realty by virtue of the fact that all of his sons' stock is attributable to him. The District Court recognized and the taxpayer concedes, as he must, that a plain meaning application of sections 304 and 318 requires this conclusion.

However, the District Court eschewed this direct approach. The court reasoned that since the taxpayer actually owned no shares in Realty, there should be no attribution to him and thus the transaction here was not one between related corporations. Its conclusion then was that the transfer should not be deemed a redemption but a simple sale entitled to long term capital gain treatment.

This interpretation of the constructive ownership rules is at war with both the language of the statute and legislative purpose of Congress. The family attribution rules, which are specifically prescribed by the statute, were designed to create predictability for the tax planner and to obviate the necessity of a court's scrutinizing family arrangements to determine whether every family member is in fact a completely independent financial entity. An authoritative study of the subject begins: "The rules of constructive ownership rest on certain assumptions which are readily supported in the everyday conduct of affairs. * * Tax administration would be severely handicapped if the rules applied only as presumptions * * *." Ringel, Surrey & Warren, Attribution of Stock Ownership in the Internal Revenue Code, 72 Harv.L.Rev. 209 (1958). Yet despite the clear congressional judgment and mandate that the shares of a son are to be treated as his father's for certain limited purposes, the court below read the explicit language as no more than a presumption and then disregarded it.

The statute does not require that a person be an actual shareholder in a corporation before shares in that corporation may be attributed to him. In a recent Second Circuit case, Levin v. Commissioner of Internal Revenue, 385 F.2d 521 (1967), the court attributed 100% ownership to a mother who had redeemed all her shares of a corporation whose sole remaining shareholder was her son. Similarly, an example given in the Federal Tax Regulations unquestionably assumes that one holding no stock in a corporation may nevertheless constructively own 100% of its shares. 26 C.F.R. § 1.304-2.[2] Indeed, any other construction would be untenable. Under the District Court's reading, if the taxpayer had retained at the time of the transfer his otherwise insignificant single share in Realty, then 100% of the stock of that corporation could be attributed to him. Clearly such a distinction could not have been purposed by the Congress.

Appellee urges upon us that at least one anomaly will flow from holding the instant transaction subject to § 304. Subsection (a) (1) provides that the

2. Example (3) in Treas.Reg. § 1.304-2 reads:
"Corporation X and corporation Y each have outstanding 100 shares of common stock. H, an individual, W, his wife, S, his son, and G, his grandson, each own 25 shares of stock of each corporation. H sells all of his 25 shares of corporation X to corporation Y. * * * [B]oth before and after the transaction H owned directly and constructively 100 percent of the stock of corporation X * * *." 26 C.F.R. § 1.304-2.

stock acquired from the person or persons in control shall be treated as a contribution to the capital of the acquiring corporation. It is asserted that since only a shareholder makes contributions to capital and since taxpayer was not an actual shareholder of Realty, the stock acquired from him cannot realistically be so treated. The short answer is that appellee's underlying premise is fallacious. Non-shareholders may and do make contributions to capital, and the Internal Revenue Code recognizes this fact. See § 362(c); see also Brown Shoe Co. v. Commissioner of Internal Revenue, 339 U.S. 583, 70 S.Ct. 820, 94 L.Ed. 1081 (1950). Moreover, the law requires that the stock only be "treated" for certain tax purposes as a contribution to capital by a person who is "treated" as a shareholder. Just as the transfer is directed by statute to be "treated" like a redemption when in fact the issuing corporation does not get its stock back, so this stock may be "treated" as a capital contribution even though it does not come from an actual shareholder. It should be stressed that appellee raises no specter of adverse effects from treating the shares as a capital contribution either on the non-shareholder or the corporation. The only point made is that the Code's treatment as applied here is "economically unrealistic." This is simply too thin a reed with which to bring down the clear statutory scheme.

Nor is there merit in appellee's contention that simply because the Treasury Regulations[3] and portions of the legislative history[4] speak interchangeably of the person in control as "taxpayer" or "shareholder," the section may not be applied if the person deemed in control of both corporations is not an actual shareholder in both. It is, of course, true that ordinarily the person transferring stock in a § 304 case will be a shareholder in the acquiring corpo-

ration. The Regulations and Committee Reports were simply addressing themselves to the commonplace transaction. Merely because these interpretative aids do not envision an insubstantial wrinkle on the same fundamental pattern is no adequate ground for holding uncovered that which is clearly within the statute.

The instant case is significantly different from this court's earlier decision in Alvord v. Commissioner of Internal Revenue, 277 F.2d 713 (1960). There, what appeared to be mandated by the tax statute was the exact antithesis of the clear legislative design. The case before us involves two close corporations owned by the same family and a transfer by the head of that family of stock in one of the corporations to the other. This is precisely the situation which § 304 was meant to govern.

Since the District Court held redemption treatment unwarranted, it did not reach the second question to which we now turn: Is the redemption here to be treated as an exchange of stock and thus subject only to a capital gains tax or is it to be treated as a dividend and taxed at ordinary income rates?

Section 302(b), 26 U.S.C. § 302(b), enumerates those categories of redemptions which are to be treated as exchanges. Both sides agree that the only pertinent category in this case is the most general one, (b) (1), which provides that a redemption shall be treated as an exchange if it "is not essentially equivalent to a dividend."

Determination of dividend equivalency requires a factual inquiry into the circumstances of each case. See Ballenger v. United States of America, 301 F.2d 192 (4th Cir.1962). Ordinarily, then, we would remand for further evidentiary hearings. However, in this case, which was submitted on stipulated facts, both the Government and the taxpayer's

---

3. See, e. g., Treas.Reg. § 1.304–2 which assumes that the taxpayer is an actual shareholder in the acquiring corporation.

4. See S.Rep.No.1622, 83d Cong. 2d Sess. (1954), 3 U.S.Code Cong. & Ad.News, p. 4876 (1954); H.Rep.No.1337, 83d Cong. 2d Sess. (1954), 3 U.S.Code Cong. & Ad. News, p. 4062(1954).

**492**

estate concur that no remand is necessary. For this reason, as well as the relative simplicity of the facts here, this court proceeds to adjudicate the issue of dividend equivalence.

On this question, appellee's sole contention is that a payment by a corporation to a non-shareholder may not be characterized as a dividend. With this we agree, for § 316 defines a "dividend" as "any distribution of property made by a corporation to its *shareholders*" out of earnings and profits. (Emphasis added.) The rub is that § 304(b) (1) specifically states:

> "* * * determinations as to whether the acquisition is, by reason of section 302(b), to be treated as a distribution in part or full payment in exchange for the stock shall be made reference to the stock of the *issuing corporation*." (Emphasis added.)

Thus, in determining whether this redemption was essentially equivalent to a dividend, we must focus attention upon C & R, of which taxpayer was not only a shareholder but by far the major one.[5]

■ Although several tests have been devised[6] and several factors exalted[7] in determining whether a redemption is not in essence a dividend, we think there is one overriding objective criterion—a significant modification of shareholder interests. See Moore, Dividend Equivalency—Taxation of Distribution in Redemption of Stock, 19 Tax L.Rev. 249 (1964). As the First Circuit has declared, "* * * we believe that the indispensable first step in making this determination is whether the redemption

of stock has caused a meaningful change in the position of the shareholder with relation to his corporation and the other shareholders." Bradbury v. Commissioner of Internal Revenue, 298 F.2d 111, 116 (1962). If the taxpayer's control or ownership of the corporation is basically unaltered by the transaction, then the proceeds he has received as a result of manipulating his corporate stock must be taxed as a dividend. See Commissioner of Internal Revenue v. Berenbaum, 369 F.2d 337 (10th Cir. 1966).

■ In examining the respective shareholder interests of C & R before and after the transfer of stock we must bear in mind that § 302(c) (1) explicitly makes applicable to this inquiry the constructive stock ownership rules of § 318. Thus, before the transfer, taxpayer is deemed to have owned not only the 369 shares of C & R actually in his name but also the 288 shares owned by his sons[8] and the one share held by his wife.[9] In all, for purposes of § 302, taxpayer before the transaction owned 658 of C & R's 688 outstanding shares. After the transaction, he held only 303 shares in his own name, but in addition, of course, he also is deemed to have owned the 289 shares of his wife and sons. Moreover, the 66 shares now held by Realty must likewise be attributed to him. Section 318(a) (2) (C) provides that stock owned by a corporation will be attributed proportionately to any person owning 50% or more of the corporation. Section 304(b) (1) directs that in applying the constructive ownership

---

5. Available earnings and profits are to be reckoned by reference to the acquiring corporation. § 304(b) (2) (A). Appellee admits that Realty's earnings and profits were adequate to cover the distribution in this case.

6. *See, e. g.*, Commissioner of Internal Revenue v. Estate of Antrim, 395 F.2d 430 (4th Cir. 1968) *following* Ballenger v. United States of America, *supra;* Hasbrook v. United States of America, 343 F.2d 811 (2d Cir. 1965). *See also* Levin v. Commissioner of Internal Revenue, *supra*, 385 F.2d at 523–524.

7. In Commissioner of Internal Revenue v. Berenbaum, 369 F.2d 337 (10th Cir. 1966), the court stressed, *inter alia*, that no previous dividends had been declared, abundant accumulated earnings existed and there had been no contraction of business following the distribution. *See also* 1 Mertens, Law of Federal Income Taxation, § 9.100 (1962).

8. Section 318(a) (1) (A) (ii).

9. Section 318(a) (1) (A) (i).

rules for testing whether a redemption is an exchange or a dividend, the 50% requirement of § 318(a) (2) (C) shall not be applicable. In the instant case, this means that the 66 shares held by Realty shall be attributed equally to its owners, taxpayer's sons, and under § 318(a) (1) (A) (ii), these shares are attributed from the sons to the taxpayer. Consequently, after the transaction taxpayer owned 658 shares of C & R, precisely the number with which he started.

As noted in Wiseman v. United States, 371 F.2d 816, 818 (1st Cir.1967), "the real question here is what was accomplished by this transaction." The answer here is that while corporate ownership and control remained the same, taxpayer, the major shareholder, had come into possession of $19,800. This was essentially nothing but a dividend and was properly taxed as such.

One tangential difficulty arising from this disposition of the case is the proper allocation of taxpayer's basis in the 66 transferred shares. This potential problem is not before us at this time, but we note in passing that there are at least two reasonable solutions. Ordinarily, when there is an acquisition by a related corporation the controlling person is a shareholder in both, and the basis of his stock in the acquiring corporation is increased by his basis in the stock transferred by him. See Treas.Reg. 26 C.F. R. § 1.304–2. In this case, since taxpayer held no shares in Realty, such an approach is not feasible. However, it would be consonant with the underlying rationale of this approach to increase pro rata the basis of the sons' shares in Realty. In Levin v. Commissioner of Internal Revenue, *supra,* 385 F.2d at 528 n. 29, where the taxpayer had redeemed all of her shares in the corporation but had not sufficiently served relations with it to avoid dividend equivalence treatment, the court said: "Her basis does not disappear; it simply is transferred to her son." As an alternative to increasing the basis of taxpayer's sons in Realty, taxpayer's own basis in his

remaining 303 shares of C & R could be augmented by his basis in the 66 transferred shares. In any event, it is clear that taxpayer's basis will not disappear.

To sum up, we construe this transaction as a redemption under § 304(a) and find that this redemption was essentially equivalent to a dividend under § 302(b). Therefore, we reverse the judgment of the District Court and enter judgment in favor of the Government.

Reversed.