BERNARD E. NIEDERMEYER AND TESSIE S. NIEDERMEYER, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1673–71. Filed June 6, 1974.

*Denton G. Burdick, Jr.*, for the petitioners.
*Lee A. Kamp*, for the respondent.

STERRETT, *Judge:* The respondent determined a deficiency of $73,-280.08 in the Federal income taxes of the petitioners for the calendar year 1966. The ultimate issue presented requires our determination of (1) whether the sale by petitioners of all their common stock in American Timber & Trading Co., Inc., to Lents Industries, Inc., was a redemption through the use of a related corporation under section 304(a)(1),[1] I.R.C. 1954, and, if so, (2) whether the redemption should be treated as a distribution in full payment in exchange for the redeemed stock under section 302(a) or as a distribution of property to which section 301 applies.

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts, together with the exhibits attached thereto, are incorporated herein by this reference.

Petitioners Bernard E. Niedermeyer and Tessie S. Niedermeyer are husband and wife who, at the time of the filing of the petition herein, maintained their legal residence in Portland, Oreg. They filed their joint Federal income tax return for the calendar year 1966 with the district director of internal revenue at Portland, Oreg.

American Timber & Trading Co., Inc. (hereinafter AT&T), was organized under the laws of the State of Oregon and its principal place of business is in that State. Prior to September 8, 1966, the issued and outstanding common stock of AT&T was owned as follows:

| Stockholder | Relationship to petitioners | Shares | Percentage of shares |
|---|---|---|---|
| Bernard E. Niedermeyer | Petitioner | 712. 928 | 14. 88 |
| Tessie S. Niedermeyer | do | 370. 189 | 7. 70 |
| Bernard E. Niedermeyer, Jr | Son | 3, 055. 221 | 63. 58 |
| Elma M. Niedermeyer | Daughter-in-law | 116. 400 | 2. 42 |
| Walter E. Niedermeyer | Son | 207. 851 | 4. 33 |
| S. T. Nava | Son-in-law | 50. 838 | 1. 06 |
| M. T. Moothart | None | 16. 243 | . 38 |
| Others | do | 273. 413 | 5. 65 |
| | | | 100. 00 |

[1] All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.

On September 8, 1966, Bernard E. Niedermeyer and Tessie S. Niedermeyer owned 70½ and 54½ shares, respectively, of the $100 par value, 6-percent cumulative preferred stock of AT&T. The total number of issued and outstanding preferred shares at that time was 2,136.

The AT&T preferred stock and the rights of the stockholders owning that stock are described in AT&T's articles of amendment to the articles of incorporation as follows:

2. PREFERRED: The corporation shall have authority to issue 3,000 shares of preferred stock, to be designated as such, which stock shall have a par value of $100 per share. The holders of issued and outstanding shares of preferred stock shall receive dividends on the par value of such stock at the rate of six percent of said par value per annum, which shall be set aside and paid before any dividends shall be set aside or paid upon the shares of common stock of this corporation. If said preferred dividend of six percent is not paid in any one year, it shall accumulate and become a charge upon the unreserved earned surplus of the corporation of the next and succeeding years, and all such accumulated and unpaid dividends on the preferred stock must be paid in full (but without interest) before the common stock of this corporation shall be entitled to receive dividends. Preferred stock shall receive no dividend other than said preferred dividend of six percent, and shall not otherwise participate in the surplus or earnings of the corporation. Shares of preferred stock shall not be entitled to any vote at meetings of the shareholders of this corporation. The corporation may at any time, or from time to time, redeem the whole or any part of its preferred stock as permitted by law by paying therefor the par value thereof and all accrued unpaid dividends thereon at the date fixed for such redemption.

In the event of the liquidation or dissolution of this corporation the holders of outstanding shares of preferred stock shall receive from the money and/or property available for distribution to shareholders, the full par value of their shares, plus all accumulated and unpaid preferred dividends thereon (but without interest), before distribution is made to the holders of common stock.

The preferred stock was authorized and issued during a reorganization of several companies and an amount equal to the par value of the preferred stock was transferred from earned surplus to AT&T's capital account.

Lents Industries, Inc. (hereinafter Lents), is a corporation organized under the laws of the State of Oregon and doing business in that State. During 1966, the issued and outstanding common stock of Lents was owned as follows:

| Stockholder | Relationship to petitioners | Shares | Percentage of shares |
|---|---|---|---|
| E. C. Niedermeyer | Son | 16 | 22⅓ |
| L. J. Niedermeyer | Son | 16 | 22⅓ |
| T. J. Niedermeyer | Son | 16 | 22⅓ |
| M. T. Moothart | None | 8 | 11 |
| S. T. Nava | Son-in-law | 8 | 11 |
| W. G. Cooney | None | 8 | 11 |

On September 8, 1966, petitioners sold their AT&T common stock to Lents for $174,975.12 but retained their 125 shares of AT&T preferred stock. Petitioners' basis for their AT&T common stock was $6,653.54. Lents' earnings and profits for the year in question were sufficient to cover the purchase of petitioners' AT&T common stock and, as stipulated, are reflected in the following tabulation:

| | |
|---|---|
| Ending balance May 31, 1966 | $163,950.74 |
| Net profit for fiscal year ended May 31, 1967 | 223,040.41 |
| Federal income tax | (94,104.89) |
| State income tax | (13,357.44) |
| Stock dividend | (216,000.00) |
| Ending balance May 31, 1967 | 63,528.82 |

On December 28, 1966, petitioners contributed their 125 shares of AT&T preferred stock to the Niedermeyer Foundation, a tax-exempt organization, and claimed a charitable contribution deduction in the amount of $12,500 on their 1966 joint Federal income tax return. Petitioners had previously contributed their other AT&T (or its predecessor's) preferred stock as follows:

| Shares | Year | Donee |
|---|---|---|
| 273 | 1956 | Niedermeyer Foundation |
| 156 | 1958 | Do. |
| 32 | 1959 | Do. |
| 26 | 1961 | Do. |
| 39 | 1962 | Do. |
| 100 | 1963 | Mt. Angel Abbey |

At the time of the sale of their AT&T common stock on September 8, 1966, and since such sale neither of the petitioners was, or has been, either an officer, director, or employee of AT&T. At the time of said sale, and at all times subsequent thereto, petitioners ceased to have any interest in AT&T, save and except their ownership of the 125 shares of AT&T preferred stock which petitioners contributed to the Niedermeyer Foundation on December 28, 1966.

On September 24, 1968, petitioners filed an amended Federal income tax return for the calendar year 1966 with the district director of internal revenue for the district of Oregon. Attached to this return was a statement entitled "Statement Pursuant to Regulation 1.302–4" by which petitioners filed the agreement called for in section 302(c)(2)(A)(iii). Said return and statement were filed after the necessity of such an agreement for qualification of the transaction as a complete termination of petitioners' interest in AT&T was brought to the

attention of the preparer of petitioners' 1966 return during an audit of that return.

The Niedermeyer family was active in the business of manufacturing and selling special wood products and related construction materials. Besides the aforementioned corporations, members of the Niedermeyer family were partners or shareholders in other organizations carrying on this business. One such business, prior to October 1, 1963, was the Niedermeyer-Martin Co., a partnership whose general partners were the petitioner, Bernard E. Niedermeyer (29-percent interest), and his sons, Bernard E. Niedermeyer, Jr. (27-percent interest), Edward C. Niedermeyer (16-percent interest), Linus J. Niedermeyer (16-percent interest), and Thomas J. Niedermeyer (12-percent interest).

During 1963 disputes arose between Bernard E. Niedermeyer, Jr., and the latter three Niedermeyer brothers. The result of these disagreements was that Bernard E. Niedermeyer, Jr., retired from the Niedermeyer-Martin Co., which subsequently was incorporated. Until his interest in AT&T was bought out in 1968 Bernard E. Niedermeyer, Jr., as controlling stockholder in AT&T thereafter refused, except for one occasion, to allow AT&T to do any business with the Niedermeyer-Martin Co. During this time of inamicable relationships between Bernard E. Niedermeyer, Jr., and the three aforementioned Niedermeyer brothers, AT&T was Niedermeyer-Martin Co.'s chief competitor. Lents acquired petitioners' AT&T common stock because the aforementioned three Niedermeyer brothers, who were shareholders in Lents and with whom Bernard E. Niedermeyer, Jr., had the disagreements, were pursuing a plan to gain control of AT&T.

On their joint Federal income tax return for the calendar year 1966, petitioners reported a long-term capital gain of $168,321.58 on the sale to Lents of their AT&T common stock. In his notice of deficiency respondent determined that the $174,975.12 proceeds of the sale were taxable as ordinary income because the transaction qualified as a redemption under section 304(a) and was essentially equivalent to a dividend.

#### OPINION

The ultimate question to be decided in this case is whether petitioners realized a capital gain or received a dividend on the sale of their AT&T common stock to Lents in 1966. The resolution of this question depends on whether the sale in question was a redemption through the use of a related corporation under the provisions of section 304(a)(1) and, if so, whether the distribution by Lents to petitioners is to be treated as in exchange for the redeemed stock under the provisions of section 302(a) or as of property to which section 301 applies.

Section 304(a)(1) provides, in pertinent part, that, if one or more persons are in "control" of each of two corporations and if one of those

corporations acquires stock in the other corporation from the person or persons in control, then the transaction shall be, treated as a distribution in redemption for purposes of section 302. Section 304(c)(1) defines the term "control" as "the ownership of stock possessing at least 50 percent of the total combined voting power of all classes of stock entitled to vote, or at least 50 percent of the total value of shares of all classes of stock." Section 304(c)(2) then states that the constructive ownership of stock rules contained in section 318(a) shall apply for the purpose of determining "control," except that the 50-percent limitations of sections 318(a)(2)(C) and 318(a)(3)(C) shall be disregarded for such purpose.

It is clear that by its terms section 304(a)(1) applies to the factual situation of this case. Prior to the transaction here in question, petitioners, husband and wife, together actually owned 1,083.117 shares out of the 4,803.083 outstanding shares of AT&T common stock, its only class of stock entitled to vote. Two of petitioners' sons owned 3,263.072 shares. Thus a total of 4,346.189 shares, or .90.49 percent, of the outstanding voting stock of AT&T was actually or constructively owned by petitioners. Three of petitioners' other sons owned 48 out of 72 shares, or 67 percent, of the outstanding stock of Lents, the ownership of such stock being constructively attributable to petitioners. Consequently, under section 304(c)(1), either petitioner, or both, are regarded as the person or persons in control of both AT&T and Lents prior to the transaction in question. Accordingly, under section 304 (a)(1) the transaction in which Lents acquired petitioners' AT&T common stock must be treated as a redemption. The fact that neither petitioner actually owned stock in the acquiring corporation is of no concern here. *Coyle* v. *United States*, 415 F. 2d 488, 490 (C.A. 4, 1968) ; *Fehrs Finance Co.*, 58 T.C. 174, 187 (1972), affd. 487 F. 2d 184 (C.A. 8, 1973), certiorari denied 416 U.S. 938 (1974).

Petitioners object to the applicability of section 304 on the ground that the attribution rules of section 318(a) should not be applied in this case. They base this position upon what they term the "bad blood" exception to the attribution rules as applied in *Estate of Arthur H. Squier*, 35 T.C. 950 (1961). In *Squier*, a case under section 302 involving the question of whether a distribution was essentially equivalent to a dividend, this Court decided that, based in part on a "sharp cleavage" between the executor of the taxpayer estate and members of the Squier family, and notwithstanding the attribution rules, the redemption in fact resulted in a crucial reduction of the estate's control over the corporation. The Court held that the distribution there was not essentially equivalent to a dividend and implicit in this conclusion was the belief that the attribution rules were not conclusive in all events in determining whether there had been a significant change

of control which would allow the conclusion that the distribution was not essentially equivalent to a dividend. We note that in *Robin Haft Trust*, 61 T.C. 398 (1973), this Court decided that, in light of *United States* v. *Davis*, 397 U.S. 301 (1970), the rationale of *Squier* was no longer applicable to section 302(b)(1).

Besides here, as was not the case with *Squier*, no evidence was adduced to show that there were any disputes or cleavage between petitioners and any of their sons. The falling out was apparently between petitioners' sons. Apparently, petitioners would have us infer from the disagreements between Bernard E. Niedermeyer, Jr., majority shareholder of AT&T, and three other of their sons, who together were majority shareholders of Lents, that petitioners did not in fact control either corporation. We are unwilling to make this assumption and consequently petitioners' argument fails on its facts.

Moreover, we are of the opinion that the "control" test of sections 304(a)(1) and 304(c) requires that the attribution rules be applied in every case. Congress expressly indicated that the attribution rules of section 318 are to be applied in determining "control" for section 304 purposes. Section 304(c)(2) states that "Section 318(a) (relating to the constructive ownership of stock) *shall* apply for purposes of determining control under paragraph (1)." (Emphasis supplied.) Under section 304(c)(1) "control" is defined only as the ownership (either actually or constructively) of certain amounts of stock. Through the use of precise rules of attribution Congress intended to remove the uncertainties existing under prior law, which had no specific statutory guidance for constructive ownership of stock in the area of corporate distributions and adjustments, in the administration of the provisions where attribution was deemed appropriate. H. Rept. No. 1337, to accompany H.R. 8300 (Pub. L. No. 591), 83d Cong., 2d Sess., p. A96 (1954). See also *Coyle* v. *United States, supra* at 490. We think the attribution rules require, through their employment in section 304, that petitioners be treated as in actual control of both AT&T and Lents, notwithstanding any "bad blood" between petitioners' sons. See *Fehrs Finance Co., supra* at 187–188. Cf. *Robin Haft Trust, supra* at 402–403.

Petitioners assert that even though the sale is to be treated as a distribution in redemption of Lents' stock under section 304(a)(1), they are entitled to treat the distribution as in full payment in exchange for their stock under section 302(a) by meeting one of the tests contained in section 302(b). The determination under section 302(b) is to be made by reference to the issuing corporation's stock, here the AT&T stock, except that the 50-percent limitations of sections 318 (a)(2)(C) and 318(a)(3)(C) are to be disregarded in applying the attribution rules of section 318(a). Sec. 304(b)(1).

Section 302(b) sets forth certain conditions under which a redemption of stock shall be treated as an exchange. If none of those conditions are met, section 302(d) provides that the distribution will then be treated as one to which section 301 applies. Petitioners do not contend that section 302(b)(2) or 302(b)(4) is applicable but they argue that the transaction in question meets the test of either section 302(b)(1) or 302(b)(3).[2]

The test of section 302(b)(1) requires that the redemption be "not essentially equivalent to a dividend." To meet the test of nondividend equivalency the redemption must, after application of the attribution rules of section 318(a) to the stock ownership interests as they existed both before and after the redemption, result in "a meaningful reduction of the shareholder's proportionate interest in the corporation." *United States* v. *Davis*, *supra* at 313. In resolution of the question of dividend equivalency, the fact that the transaction in issue may have had a bona fide business purpose is no longer relevant. *United States* v. *Davis*, *supra* at 312. Furthermore, the applicability of the attribution rules in section 302(b)(1) is not affected by any "bad blood" between petitioners' sons. *Robin Haft Trust*, *supra* at 402–403.

As stated above, prior to the redemption petitioners owned, either actually or constructively, 90.49 percent of the outstanding common stock of AT&T. After the redemption, petitioners actually owned no AT&T common stock, although they did own 125 shares out of 2,136 outstanding shares of that corporation's preferred stock. However, petitioners constructively owned 82.96 percent of the outstanding common stock of AT&T comprised as follows: 3,055.221 shares actually owned by their son Bernard E. Niedermeyer, Jr., 207.851 shares actually owned by their son Walter E. Niedermeyer, and 67 percent of the 1,083.117 shares, or 725.688 shares, actually owned by Lents and constructively owned by their sons E. C., L. J., and T. J. Niedermeyer. Sec. 318(a)(5)(A). We do not think a reduction in ownership of the AT&T common stock from 90.49 percent to 82.96 percent constitutes a meaningful reduction of petitioners' proportionate interest in AT&T in the instant case. See *Friend* v. *United States*, 345 F. 2d 761, 764 (C.A. 1, 1965); *Stanley F. Grabowski Trust*, 58 T.C. 650, 659 (1972); *Fehrs Finance Co.*, *supra* at 185–186. With such a small change in a high percentage interest, petitioners' control and ownership of AT&T is essentially unaltered and cannot be considered to have undergone

---

[2] SEC. 302(b). REDEMPTIONS TREATED AS EXCHANGES.—
   (1) REDEMPTIONS NOT EQUIVALENT TO DIVIDENDS.—Subsection (a) shall apply if the redemption is not essentially equivalent to a dividend.

\*    \*    \*    \*    \*    \*    \*

   (3) TERMINATION OF SHAREHOLDER'S INTEREST.—Subsection (a) shall apply if the redemption is in complete redemption of all of the stock of the corporation owned by the shareholder.

a meaningful reduction. An 82.96-percent interest clearly is sufficient to dominate and control the policies of the corporation.

Petitioners next assert, under several theories, that they terminated their interest in AT&T as contemplated in section 302(b)(3). The test provided therein allows the redemption to be treated as an exchange "if the redemption is in complete redemption of all of the stock of the corporation owned by the shareholder." Unless the conditions of section 302(c)(2) are satisfied to exempt petitioners from application of the family attribution rules of section 318(a)(1), these rules apply in their entirety in determining whether there has been a redemption of petitioners' complete stock interest in AT&T.

Petitioners sold all their AT&T common stock to Lents on September 8, 1966, and contributed all their AT&T preferred stock to the Niedermeyer Foundation on December 28, 1966. On September 24, 1968, petitioners filed an amended return for the calendar year 1966 to which was attached the agreement called for in section 302(c)(2)(A)(iii).

It is clear that, if they are to meet the requirements of the test of section 302(b)(3), petitioners must show that they completely terminated their stock interest in AT&T and in so doing they must be able to effect a waiver of the family attribution rules of section 318(a)(1) through use of section 302(c)(2).[3]

While section 1.302–4(b), Income Tax Regs., states that the agreement specified in section 302(c)(2)(A)(iii) must be attached to a return timely filed for the year in which the distribution occurs, several cases have held that some delay in filing the agreement does not vitiate it, and we find those cases to be applicable here where petitioners filed the agreement upon discovering their inadvertent failure to do so earlier. *United States* v. *G. W. Van Keppel*, 321 F. 2d 717 (C.A. 10, 1963); *Georgie S. Cary*, 41 T.C. 214 (1963).

However, the fact that a proper agreement was filed alone does not effect a waiver of the family attribution rules unless the other requirements of section 302(c)(2) are satisfied. The only other requirement in question here is that petitioners must have had no interest in AT&T,

---

[3] SEC. 302(c). CONSTRUCTIVE OWNERSHIP OF STOCK.—

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(2) FOR DETERMINING TERMINATION OF INTEREST.—

(A) In the case of a distribution described in subsection (b)(3), section 318(a)(1) shall not apply if—

(i) immediately after the distribution the distributee has no interest in the corporation (including an interest as officer, director, or employee), other than an interest as a creditor,

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(iii) the distributee, at such time and in such manner as the Secretary or his delegate by regulations prescribes, files an agreement to notify the Secretary or his delegate of any acquisition described in clause (ii) and to retain such records as may be necessary for the application of this paragraph.

other than an interest as a creditor, immediately after the distribution referred to in section 302(b)(3). In the instant case, however, petitioners retained their 125 shares of AT&T preferred stock, at least until December 28, 1966, after the redemption of all their AT&T common stock on September 8, 1966.

Petitioners contend that ownership of these 125 shares of AT&T preferred stock until December 28, 1966, does not prevent application of the exemption provided in section 302(c)(2) and consequently qualification under section 302(b)(3) as having completely terminated their stock interest in AT&T. Petitioners make the following arguments to show that the AT&T preferred stock retained until December 28, 1966, was not the retention of an interest other than that of a creditor and implicitly was not the retention of a stock interest in AT&T: (1) The preferred stock was actually debt; (2) a de minimis rule should be applied; (3) the relinquishment of their preferred stock interest in AT&T on December 28, 1966, was "immediately after" the sale of their AT&T common stock on September 8, 1966; and (4) at the time of the sale of their AT&T common stock they intended to donate their AT&T preferred stock to charity before the year's end.

While citing no cases in their support, petitioners first argue here that the characteristics of the AT&T preferred stock are those commonly associated with debt instruments. We do not agree. A number of factors have been considered in resolution of this question of fact, see *O. H. Kruse Grain & Milling* v. *Commissioner*, 279 F. 2d 123, 125–126 (C.A. 9, 1960), affirming a Memorandum Opinion of this Court; *Wilbur Security Co.*, 31 T.C. 938, 948 (1959), affd. 279 F. 2d 657 (C.A. 9, 1960); however, we see no useful purpose in reciting all the factors but will confine discussion herein only to those we think relevant.

While it is true that the preferred stockholders had no right to participate in the management of the corporation, such fact is not so uncharacteristic of preferred stock rights as to be conclusive, standing alone, of the question at hand. *John Kelley Co.* v. *Commissioner*, 326 U.S. 521, 530 (1946). We think that the following facts are indicative of the equity flavor of the preferred stock: There was no unconditional obligation to pay a principal sum certain on or before a fixed maturity date; the timing of preferred "dividends" was discretionary with the corporate directors; upon liquidation the preferred stockholders would be paid "from the money and/or property available for distribution to shareholders," which indicates to us that the preferred stock was subordinated in priority to the general creditors; AT&T's articles of amendment to the articles of incorporation used the terms "dividends," "preferred stock," and "shareholders" with reference to the instruments in question; and the preferred

stock was created during a reorganization by a transfer of earned surplus to AT&T's capital account.

We think petitioners' second argument attempting to interject a de minimis rule allowing the retention of some small stock interest while qualifying under section 302(b)(3) is wholly without merit. Section 302(b)(3) clearly requires no less than a complete termination of all petitioners' stock interest in the corporation.

Petitioners next assert that they had no interest in AT&T "immediately after the distribution," as the phrase is used in section 302(c)(2)(A)(i), because the December 28, 1966, contribution should be considered to have occurred immediately after the September 8, 1966, redemption. We assume petitioners believe that if they satisfy this requirement of having no interest "immediately after" the redemption, they will also satisfy the requirement in section 302(b)(3) of having completely terminated their stock interest in AT&T. While we express no opinion on petitioners' apparent belief, we think the words "immediately after" must be given their ordinary meaning and that consequently December 28 cannot be considered "immediately after" September 8. Cf. *Commissioner* v. *Brown*, 380 U.S. 563, 570–571 (1965).

Petitioners' final argument to satisfy the requirements of sections 302(b)(3) and 302(c)(2)(A)(i) is that, at the time of the transfer of their AT&T common stock to Lents, they intended to donate their remaining AT&T preferred stock to charity by the end of 1966. Petitioners did in fact contribute their 125 shares of AT&T preferred stock to the Niedermeyer Foundation on December 28, 1966.

While petitioners' contention in this regard is not entirely clear, their argument appears to be that the September 8, 1966, transfer was but one step in a plan to terminate completely their interest in AT&T, the final step in such plan being their December 28, 1966, contribution of their remaining preferred stock. The only case cited by petitioners, *Arthur D. McDonald*, 52 T.C. 82 (1969), involved the question of whether a plan, calling for the redemption of that taxpayer's E&M preferred stock which was followed by a reorganization in which the taxpayer exchanged his E&M common stock for Borden stock, resulted in a distribution with respect to the preferred stock, which was essentially equivalent to a dividend under section 302(b)(1). The Court concluded that, after completion of the plan, the taxpayer's direct interest in E&M was terminated and consequently the redemption was not essentially equivalent to a dividend. Petitioners have not urged, and we consider it wise since the attribution rules would frustrate them, that their intention to donate the AT&T preferred stock by year's end shows that the redemption comes within the provisions of section 302(b)(1). Rather, they apparently contend

that their intentions to donate the AT&T preferred stock constituted a plan to terminate their interest in AT&T which, with use of section 302(c)(2)(A), satisfies the requirements of section 302(b)(3).

Where redemptions were executed pursuant to a plan to terminate one's interest in a corporation, it has been held that dividend equivalency may be avoided where the individual redemptions are component parts of a single sale or exchange of an entire stock interest. *In Re Lukens' Estate*, 246 F. 2d 403 (C.A. 3, 1957), reversing 26 T.C. 900 (1956); *Jackson Howell*, 26 T.C. 846 (1956), affd. 247 F. 2d 156 (C.A. 9, 1957); *Carter Tiffany*, 16 T.C. 1443 (1951).[4] Where there is a plan which is comprised of several steps, one involving the redemption of stock that results in a complete termination of the taxpayer's interest in a corporation, section 302(b)(3) may apply. *Otis P. Leleux*, 54 T.C. 408 (1970); *Estate of Oscar L. Mathis*, 47 T.C. 248 (1966). However, the redemption must occur as part of a plan which is firm and fixed and in which the steps are clearly integrated. *Otis P. Leleux, supra* at 418.

We regard the evidence presented on petitioners' behalf as too insubstantial to prove the existence of such a plan. Petitioner Bernard E. Niedermeyer's self-serving statement during the trial that at the time of transfer of the AT&T common stock on September 28, 1966, he intended to donate the AT&T preferred stock to charity by year's end, and petitioners' prior history of contributions do not establish to us a firm and fixed plan in which all the steps are clearly integrated.

The plan certainly was not in writing and there was no evidence of communication of petitioners' asserted donative intention to the charity or to anyone. One of petitioners' sons testified that Lents acquired petitioners' AT&T common stock in an attempt to gain control of AT&T. However, no mention at all was made by this son of any desire on petitioners' part to terminate their total interest in AT&T. Petitioners could easily have changed their minds with regard to any intent to donate the preferred stock. Clearly petitioners' decision to donate the preferred stock has not been shown to be in any way fixed or binding. Cf. *Estate of Oscar L. Mathis, supra* at 257; *Henry McK. Haserot*, 46 T.C. 864, 868 (1966), affirmed sub nom. *Commissioner* v. *Stickney*, 399 F. 2d 828 (C.A. 6, 1968), on remand from 355 F. 2d 200 (C.A. 6, 1965). We note that *Arthur D. McDonald, supra*, cited by petitioners, involved a written plan which was fixed as to its terms and apparently

---

[4] The cited cases were decided under the "essentially equivalent to the distribution of a taxable dividend" standard of sec. 115(g)(1), I.R.C. 1939. Sec. 29.115–9, Regs. 111, provided that "a cancellation or redemption by a corporation of all of the stock of a particular shareholder, so that the shareholder ceases to be interested in the affairs of the corporation, does not effect a distribution of a taxable dividend." Under present law, sec. 302(b)(1) would now appear applicable if completion of the plan results in a meaningful reduction in the taxpayer's proportionate interest in the corporation.

binding. By the above discussion we do not mean to indicate that all such plans need to be in writing, absolutely binding, or communicated to others, but we do think that the above-mentioned factors, all of which are lacking here, tend to show a plan which is fixed and firm.

Since petitioners have not established that the redemption is to be treated as an exchange under section 302(a), the proceeds are to be treated as a distribution of property to which section 301 applies and as a dividend as determined by the respondent.[5]

*Decision will be entered for the respondent.*

---

[5] We note that competent evidence has not been presented from which we can determine whether the distribution in question was or was not made out of Lents' earnings and profits. However, petitioners have not argued that such distribution was not made out of Lents' earnings and profits. Consequently, we assume and have found as a fact that earnings and profits were sufficient to cover the distribution during the year in issue. *Harry Makransky,* 36 T.C. 446, 453 (1961), affd. 321 F. 2d 598 (C.A. 3, 1963).