IRWIN G. LUKENS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 40926. Filed July 31, 1956.

*Charles S. Jacobs, Esq.,* and *Early L. Gilbert, C. P. A.,* for the petitioner.
*William G. Handfield, Esq.,* for the respondent.

902

## OPINION.

TURNER, *Judge:* The only question submitted is whether the redemption in 1948 of a part of petitioner's stock in Florex Gardens, in consideration for the cancellation of $22,300 of his indebtedness to Florex, was "essentially equivalent to the distribution of a taxable dividend." If so, the provisions of section 115 (g) of the Internal Revenue Code of 1939 [1] are applicable, and the amount so applied in satisfaction of petitioner's indebtedness is to be treated as a taxable dividend.

Both parties suggest various factors which they argue are significant, if not controlling, in determining that the distribution in redemption of the 446 shares was or was not, as the case might be, essentially equivalent to the distribution of a taxable dividend.

Factors stressed by the respondent as being important to, if not controlling of, the determination of the question at issue are (a) whether there was a justifiable business reason for the redemption of the stock; (b) whether the accumulation of surplus warranted payment of a dividend; (c) whether net earnings were substantial, good, or poor during the years surrounding the transaction; (d) whether

---

[1] SEC. 115. DISTRIBUTIONS BY CORPORATIONS.

(g) REDEMPTION OF STOCK.—If a corporation cancels or redeems its stock (whether or not such stock was issued as a stock dividend) at such time and in such manner as to make the distribution and cancellation or redemption in whole or in part essentially equivalent to the distribution of a taxable dividend, the amount so distributed in redemption or cancellation of the stock, to the extent that it represents a distribution of earnings or profits accumulated after February 28, 1913, shall be treated as a taxable dividend.

dividends had been paid regularly, and if not, why not; (e) whether there was a shrinkage or reduction of business comparable to the reduction of capital stock; (f) whether the transaction resulted in an impairment of the capital; (g) whether there was an intent on the part of the stockholders to liquidate the corporation; (h) whether there was a close relationship between and among the stockholders; and (i) whether the stockholder whose stock was redeemed was in substantially the same position after the transaction as before.

Petitioner takes the position that the payment made by Florex to him in the redemption of the 446 shares could not have been "essentially equivalent to the distribution of a taxable dividend" where (a) the redemption reduced the percentage of his ownership of the company from 36½ per cent to less than 10 per cent; (b) no payment of any kind was made to the holders of the other 63½ per cent of the stock; (c) the stock was redeemed at its par value, which was also its fair market value at the time of the redemption and its cost to him; (d) treatment of the redemption price as a distribution of a taxable dividend would increase the cost basis of his remaining 101 shares of stock to a fantastically high figure; (e) the stock redeemed was not dividend stock, but stock which had been originally issued at par for cash or its equivalent; and (f) management of the corporation knew that the corporation's needs for working capital would be less in future years.

Most, if not all, of the factors mentioned have been present one or more times in the decided cases, and have been regarded as significant in varying degrees for the purpose of determining whether the distribution or distributions in redemption of stock were, or were not, within the provisions of section 115 (g). In our study of the cases, however, we have been unable to discover any certain or reasonably definite test or criterion for determining when such distribution is to be treated as a taxable dividend, under that section. And, as aptly stated in *Woodworth* v. *Commissioner*, 218 F. 2d 719, affirming a Memorandum Opinion of this Court, "the decided cases in the end only lead back to the door at which we entered, the statute itself, which imposes an ordinary income tax upon a partial liquidation only when made 'at such time' and 'in such manner' as to make the distribution and cancellation essentially equivalent to the distribution of a dividend." In short, the applicability of the statute must be determined on the basis of the combination of the facts and circumstances in each particular case.

We do know, from the specific wording of the statute, that whether or not the stock redeemed was issued as a stock dividend is not decisive of the applicability of section 115 (g). We also know that

under the pertinent regulations[2] there are specified situations in which distributions made in the redemption of stock are not to be regarded as being within the purview of the said section. Section 115 (g), for instance, does not apply to a distribution in complete cancellation or redemption, or to one of a series of distributions in complete cancellation or redemption, of all of the stock of a corporation, the tax effect resulting from such distributions being governed by section 115 (c) of the Code. The regulation also excludes from the scope of section 115 (g) amounts distributed in "cancellation or redemption by a corporation of all of the stock of a particular shareholder, so that the shareholder ceases to be interested in the affairs of the corporation."

At first blush, it might appear that this is a case falling under that part of the regulation last referred to above, which categorically states that if, by reason of the cancellation or redemption of all of the stock of a particular shareholder, so that the shareholder ceases to be interested in the affairs of the corporation, the distribution is not within section 115 (g), since the petitioner in surrendering the 446 shares was merely taking one step in an over-all plan whereby he intended to divest himself of all of his Florex stock and thereby cease "to be interested" in its affairs. Upon examination, however, it is clear that the redemption of the 446 shares in the instant case was not a redemption such as the regulation contemplates. The facts show that petitioner had no intention of surrendering all of his Florex stock for redemption, but that, to the contrary, he intended not only that the corporate business should continue as it had, but that, except for the 100 shares of stock which he had sold to his son, George, in 1923, the ownership of the corporation should continue to be represented by the shares which, though no longer his, would be owned

---

[2] Regulations 111.

SEC. 29.115–9. DISTRIBUTION IN REDEMPTION OR CANCELLATION OF STOCK TAXABLE AS A DIVIDEND.—If a corporation cancels or redeems its stock (whether or not such stock was issued as a stock dividend) at such time and in such manner as to make the distribution and cancellation or redemption in whole or in part essentially equivalent to the distribution of a taxable dividend, the amount so distributed in redemption or cancellation of the stock, to the extent that it represents a distribution of earnings or profits accumulated after February 28, 1913, shall be treated as a taxable dividend.

The question whether a distribution in connection with a cancellation or redemption of stock is essentially equivalent to the distribution of a taxable dividend depends upon the circumstances of each case. A cancellation or redemption by a corporation of a portion of its stock pro rata among all the shareholders will generally be considered as effecting a distribution essentially equivalent to a dividend distribution to the extent of the earnings and profits accumulated after February 28, 1913. On the other hand, a cancellation or redemption by a corporation of all of the stock of a particular shareholder, so that the shareholder ceases to be interested in the affairs of the corporation, does not effect a distribution of a taxable dividend. A bona fide distribution in complete cancellation or redemption of all of the stock of a corporation, or one of a series of bona fide distributions in complete cancellation or redemption of all of the stock of a corporation, is not essentially equivalent to the distribution of a taxable dividend. * * *

equally by his son and daughter, the natural objects of his bounty, and by reason of the gifts which he had made and did make to them. In short, he intended to effect no substantial change in the corporation or its relationship to its stockholders, but rather, intended that such changes as did result would come from the gifts of stock which, by design, would be held in equal proportions by George and Clara. Accordingly, the over-all result was not substantially different from the result which would have been occasioned by an admitted distribution of a dividend on his stock from the profits of the corporation and the use thereof in the satisfaction of his indebtedness.

Other facts, in our opinion, also indicate that the end result was, for all practical purposes, a de facto distribution to petitioner from the profits of the corporation. Florex had had some bad years, but the facts indicate that such years were decidedly the exception. There is every indication that it was very prosperous from 1924 through 1929, since during that time it paid very attractive dividends. Its balance sheets for the years 1932 through 1949 indicate that it had a bad year in 1933, but after 1933, and for every year through 1939, it steadily increased its accumulated earnings. It would appear that it sustained fairly substantial losses for the years 1940, 1941, and 1942, but for the years thereafter up to 1948 its business was quite profitable, and between December 31, 1942, and December 31, 1947, its accumulated earnings increased by $105,096.63. In the face of those earnings, however, it paid no dividends whatever after May 31, 1929. It apparently sustained fairly substantial losses in both 1948 and 1949, but even after those losses it still disclosed on its balance sheets a comparatively substantial amount of accumulated earnings, and was in a position, in 1948, to permit petitioner's debts to it to the extent of $22,300 to be satisfied, not by cash, but by the turning in of stock, which stock it did not write out of capital but carried as treasury stock, continuing to show its capital stock after the surrender in the same amount as it had before, namely, $75,000.

It is true that the stockholders, particularly petitioner and his son, had at numerous times loaned money to the corporation, presumably to meet temporary cash needs, since in the main most of the amounts so borrowed by Florex were paid off within relatively short periods of time. According to the record, however, petitioner made only one loan to Florex after December 31, 1937, which was a loan of $3,000 on November 10, 1942, all of which was repaid on December 31, 1942. After 1942, and from March 3, 1944, to October 29, 1948, during which time Florex was prospering and adding to its accumulated earnings, petitioner, by 11 loans ranging from $2,000 to $8,000 and amounting

in the aggregate to $56,000, had the use according to his needs of the Florex surplus, one loan of $7,000 being made on October 29, 1948, just 2 months before the surrender of the 446 shares of stock and for which he received the $22,300 credit against his indebtedness.

It would thus appear that Florex, particularly during the 1940's and up to and including the taxable year, had accumulated earnings which it did not need in the operation of its business, but instead of distributing dividends, it made loans to the petitioner, who, except for 100 shares, either owned or by gift had divided all of the outstanding stock between his son and daughter. In that position, petitioner was content to carry his withdrawals from Florex as loans, and according to the testimony of George, if Florex should need the cash for operations, petitioner was in a position to satisfy that need by prompt repayment of the loans. It would appear, however, that when the time was approaching when petitioner would have completed the division of his stock between George and Clara, it was decided, as to $22,300 of the amounts which Florex, by reason of its surplus earnings over the years, had been able to loan to petitioner without hampering its business, that repayment was not necessary and would not be required. Such being the picture, as we see it, we cannot escape the conclusion that the redemption of the 446 shares of stock was "at such time and in such manner" as to make the $22,300 credited to petitioner against his indebtedness "essentially equivalent to the distribution of a taxable dividend," under section 115 (g).

Against that conclusion, peitioner argues that the occasion of the redemption was a reduction for business purposes in Florex's capital, and not a distribution of profits, the basis for the argument being that it was the intention of George, when he obtained control of Florex, to raze the burdensome and gigantic greenhouse, thereby lessening the needs of the company for capital, and that in 1950, when petitioner no longer owned any of the stock, the greenhouse was razed. Not only is there no demonstration that such was the occasion for the surrender by petitioner of the 446 shares, but the facts show that during the years particularly from 1944 up to the surrender of the said shares Florex was able to conduct its business, which included the maintenance of the huge greenhouse, and still have accumulated earnings sufficient to enable it to make the loans to petitioner and to redeem the stock at the end of 1948, a year which according to its balance sheet was a loss year.

*Decision will be entered for the respondent.*