F. Norman PHELPS and Alice Phelps,
Petitioners,

v.

COMMISSIONER OF INTERNAL REV-
ENUE, Respondent.

No. 15386.

United States Court of Appeals
Ninth Circuit.

July 24, 1957.

W. P. Thayer, Arthur H. Deibert, William L. Kumler, Los Angeles, Cal., for petitioners.

Charles K. Rice, Asst. Atty. Gen., Marvin W. Weinstein, Ellis N. Slack, Harry Baum, C. Guy Tadlock, Attys., Dept. of Justice, Washington, D. C., for respondent.

Before HEALY and ORR, Circuit Judges and MURRAY, District Judge.

ORR, Circuit Judge.

We have for consideration a petition of F. Norman Phelps and Alice Phelps, hereafter petitioners, for a review of a decision of the Tax Court of the United States sustaining a determination by the Commissioner of Internal Revenue of a deficiency in petitioners' Federal Income Taxes for the calendar year 1948.

The question presented is whether distributions from three related corporations in redemption of stock held by the petitioners were essentially equiva-

lent to the distribution of taxable dividends within the meaning of § 115(g), Internal Revenue Code of 1939, 26 U.S. C.A. § 115(g).

Prior to the transaction in question, petitioners held half of the outstanding stock in two companies retaining Chevrolet dealership franchises in California, Capitol Chevrolet Company and Mid-Valley Chevrolet Company. The other half of the outstanding stock was held by J. A. Kenyon through both a trust, hereafter called the Kenyon Trust, and a holding company, the J. A. K. Company. J. A. Kenyon created the Kenyon Trust for the benefit of his daughter, leaving himself as trustee with the power to deal with the corpus as absolute owner. The holding company, J. A. K. Company, was wholly owned by J. A. Kenyon. Together, the Kenyon Trust and the J. A. K. Company are referred to as the "Kenyon interest." A third Chevrolet dealership, Howell Chevrolet Company, was held ⅓ by the petitioners, ⅓ by the Kenyon interest, and ⅓ by Jackson Howell.

Each company operated Chevrolet dealerships under Direct Dealer Selling Agreements with the Chevrolet Motor Division of General Motors Corporation. Such agreements are on a yearly basis, terminating each October 31st.

On or about September 1, 1948, the Regional Manager of Chevrolet advised the companies that Chevrolet had established a new policy of not allowing any trust or holding company to own stock in any Chevrolet dealership. The Regional Manager advised the elimination of the J. A. K. Company and the Kenyon Trust from stock ownership in the three dealerships, and also suggested that a fair arrangement would be for Phelps, Kenyon, and Howell to retain the same proportionate ownership in the dealerships, in view of the past successful operation of the companies.

Motivated by a realization that the probable consequences of non-compliance would be loss of their Chevrolet franchises upon expiration, Phelps, Kenyon and Howell devised a plan to put the dealerships in conformity with Chevrolet policy. This plan eliminated the Trust by having each of the three corporations redeem a given number of shares held by the Trust, and also redeem a sufficient number of shares held by Phelps and Howell so that Phelps, Kenyon and Howell would retain exactly the same proportionate interest in each corporation. Kenyon would then purchase personally any remaining shares held by the Trust. We find nothing in the record respecting the elimination of the J. A. K. Company from stock ownership in the dealerships at the same time.

On December 21, 1948, the first step of the plan was put into effect, and the corporations made the following distributions in redemption of shares:

|  | Capitol Co. | Mid-Valley Co. | Howell Co. |
|---|---|---|---|
| Petitioners | $75,518.30 | $74,340.50 | $46,508.00 |
| Kenyon Trust | 75,518.30 | 74,340.50 | 46,508.00 |
| J. Howell | —— | —— | 46,508.00 |

The redemptions left the petitioners and the Kenyon interest each owing 50% of Mid-Valley and Capitol companies, the same as before the redemptions; and the petitioners, Kenyon and Howell each holding 33⅓% of Howell Co., also the same as before the redemptions. The shares held by the Kenyon Trust were reduced to 7% in Mid-Valley and Capitol companies and to 3⅓% in Howell Co. A total of $439,233.60 was distributed to the shareholders in redemption of the shares, and the shares of stock so redeemed were cancelled and the stated capital reduced accordingly. All three companies had been incorporated on April 10, 1946; in more than two years of successful operations no dividends were declared or paid by any of the three corporations. Yet, at the time of the distributions in redemption, the accumulated earnings and profits of each corporation were in excess of the total amount distributed. The earned surplus of each dealership, subsequent to the redemptions, were as follows:

| | |
|---|---|
| Mid-Valley Co. | $275,536.12 |
| Capitol Co. | 285,666.90 |
| Howell Co. | 223,970.73 |

The redemptions did result in the capital of the corporations falling below the standard set by Chevrolet for their dealers, requiring each company to borrow funds. There was no contraction in the operations of any of the dealerships, and none was contemplated for the future at the time of the redemptions.

In July, 1950, the remaining shares held by the Kenyon Trust were redeemed by each corporation.

The Commissioner of Internal Revenue determined that the distribution to the Phelps was essentially equivalent to the distribution of taxable dividends within the meaning of § 115(g), Internal Revenue Code of 1939.

The Commissioner also assessed deficiencies in the 1949 returns of the Kenyon Trust and Jackson Howell upon the same ground. The Tax Court sustained the Commissioner's determination as to the petitioners and Howell. However, the Tax Court held that the distribution to the Kenyon Trust was not essentially equivalent to a taxable dividend, since the redemption of the shares held by the Trust sharply reduced its interest in each of the corporations, and was the first step in completely eliminating the Trust as a shareholder.

It is urged by appellants that the sole reason for the redemptions was a valid business purpose, viz.: a compliance with the new Chevrolet policy of eliminating the Kenyon Trust. It is also argued that the suggestion from Chevrolet's Regional Manager to retain the relative control of Kenyon, Phelps and Howell amounted to a mandate to them to comply with Chevrolet policy.

■ The Tax Court discredited this contention and found to the contrary. This finding is supported by substantial evidence. It is evident that what was achieved by the redemptions, aside from the elimination of the Kenyon Trust as a principal shareholder, was the retention of identical interests of the shareholders in each corporation, a strong circumstance to be considered in determining the applicability of § 115(g). As was pointed out by the Tax Court, the elimination of the Trust could have been achieved by the mere redemption of shares held by it. The net result of the plan adopted, however, was the transfer of accumulated earnings and profits to Phelps and Howell.

Recently, this Court in Earle v. Woodlaw, 9 Cir., 1957, 245 F.2d 119, certiorari denied, 77 S.Ct. 1400, had occasion to review the judicial criteria involved in the determination of whether a distribution is essentially equivalent to a taxable dividend within the meaning of § 115(g) of the Internal Revenue Code of 1939.

The same criteria were applied in the more recent case of Pacific Vegetable Oil Corp. v. Commissioner, 9 Cir., 1957, —— F.2d ——.

■ The same criteria applied to the facts of this case reveal a situation where the distributions in redemption to the petitioners accomplished no more than the transfer of accumulated earnings and profits. The absence of a corporate purpose, and the presence of a plan benefiting only the shareholders, is highly persuasive. See Earle v. Woodlaw. The same can be said for the retention of the same proportion of ownership and control by the same stockholder interests.

The case of Boyle v. Commissioner, 3 Cir., 1951, 187 F.2d 557, relied on by the Tax Court, is in point. There, the taxpayer took a one-third interest in a new corporation organized to sell rubber products which the taxpayer had invented. He was one of the three principal shareholders. Upon the death of one, the taxpayer and the remaining principal shareholder caused the corporation to redeem most of their shares at a time when the earnings of the corporation had soared due to war profits arising from the manufacture and sale of rubber boats and life jackets. Another series of transactions left the taxpayer with the same degree of ownership that he had before the redemptions, although the identity of the other shareholders chang-

ed. The Court of Appeals there affirmed the Tax Court's finding that the distribution to the taxpayer was essentially equivalent to the distribution of a taxable dividend, rejecting the taxpayer's argument that the distribution in redemption was not pro rata. That court, characterizing the transaction as arising from the desire of the shareholders to get their money out of the business, pointed out that the taxpayer was left in a similar position with respect to his ownership and control of the corporation, although the other shareholders changed.

The same reasoning applies to a similar contention made by the taxpayers in the instant case, to the effect that the redemption was not pro rata.

There was no contraction of corporate activities contemplated at the time of the redemptions, another factor indicative of a disguised dividend from earnings accumulated without dividends within the corporation. Pacific Vegetable Oil Corp. v. Commissioner.

The decision of the Tax Court is affirmed.