OPINION The only issue for determination is whether the distributions with respect to the redemption of Otis’ stock in Gulf Coast which occurred in 1962, 1963, and 1964 represented amounts realized on the sale or exchange of property, or, whether they were essentially equivalent to dividends. Subsection (b) of section 302[2] sets forth the conditions under which redemptions will be treated as exchanges. Petitioner argues that the redemptions in issue herein were either “in complete redemption” of all of his stock in Gulf Coast as provided by subsection (b) (3), or in the alternative, were not essentially equivalent to dividends within the meaning of subsection (b) (1). Section 302(d) provides that redemp-tions which fail to qualify as exchanges will be treated as a distribution of property to which section 301 applies. Dividends are included m gross income under section 301 (c) (1). Petitioner alleges that in December 1961 he decided that he would like to retire from business and completely eliminate his and his wife’s interest in Gulf Coast by January 2,1968, his 62d birthday. He states that in furtherance of this objective, Bol'and Breaux, the accountant for and a director of Gulf Coast, devised a plan under which their total interest would be gradually withdrawn by a series of yearly redemp-tions. Under this purported plan, the number of ¿bares to be redeemed each year would be limited to an amount which would allow the company to maintain a satisfactory level of working capital. Petitioner contends that the redemptions in issue herein were made pursuant to this plan. The redemption of 1964, the last which occurred, reduced Otis’ interest in the company to 50.3 percent[3] of the outstanding stock. Later in 1964 the Internal Revenue Service examined the above transactions and advised petitioner that they would be treated as essentially equivalent to dividends. No further redemptions were effected. Although petitioner admits that neither he nor the company was ever contractually obligated to carry out this plan, he contends that there is a “gentleman’s agreement” to do so. He states that he and the other directors of Gulf Coast have agreed to redeem his and his wife’s remaining shares in the company “in as few steps as working capital will allow” in the event the Court decides this case in his favor. Taking petitioner’s arguments in reverse order, we agree with respondent that the distributions in question bear most of the benchmarks of dividend equivalents: there was no corporate business purpose for the respective redemptions; the corporation’s business did not contract but on the contrary expanded thereafter; petitioner remained in control of the corporation afterward as before and the initiative for the redemptions came from the shareholders not from the corporation. Considering 'all of these criteria in the light of the other facts disclosed by the record before us, it would appear that the redemptions in 1961 and subsequent years before us were essentially equivalent to dividends, taxable as ordinary income. Gulf Coast had accumulated earnings on December 31, 1961, in excess of $100,415.71 and prior to that year had never paid a cash dividend. In 1961 the first cash dividend ever distributed was $10 per share. Thereafter in 1962 $5 per share was paid; in 1963 $5 per share was paid; in 1964 $10 per share was paid; and in 1967 $20 per share was paid. There had previously been stock dividends distributed in 1953 'and 1960 as described in our findings. We conclude and hold that the redemptions in question all have the net effect of dividend distributions and therefore cannot be treated as exchanges under section 302(b)(1). Petitioner’s principal and almost only real contention for tax relief is under subsection (b) (3) of section 302: that the redemptions in issue represented the first three steps of a plan to terminate his and his wife’s interest hr Gulf Coast. He notes that where redemptions have been executed pursuant to such a plan, it has been held that dividend equivalence may be avoided under the rationale that the individual redemptions constitute, in substance, the component parts of a single sale or exchange of the entire stock interest. In Re Lukens' Estate, 246 F. 2d 403 (C.A. 3, 1957), reversing 26 T.C. 900 (1956); Jackson Howell, 26 T.C. 846 (1956), affd. 247 F. 2d 156 (C.A. 9,1957); Carter Tiffany, 16 T.C. 1443 (1951); Perry S. Lewis, 47 T.C. 129 (1966). However, for section 302(b) (3) to apply there must be a complete redemption of oil of the stock owned by a shareholder and we have refused to treat a series of redemptions as a single sale unless the re-demptions are pursuant to a firm and fixed plan to eliminate the stockholder from the corporation. Isidore Himmel, 41 T.C. 62 (1963), reversed on other grounds 338 F. 2d 815 (C.A. 2, 1964). In short, the Steps of the plan must be clearly integrated. Jackson Howell, supra. We have found that the petitioner in the instant case has failed to prove the existence of such a plan. Indeed the record points to a contrary conclusion and the alleged plan appears to us to be afterthought rather than prearrangement. There is just no satisfactory credible evidence before us that the purported plan existed or prompted the redemptions in question. During the years 1962 through 1964, the corporate minutes of Gulf Coast make no reference to any plan to terminate petitioner’s interest. Instead, the minutes indicate that the redemptions were made for a wholly different purpose. With regard to the redemption of 70 shares of Otis’ stock in 1962, the first of the redemptions in issue herein, the minutes state that “(t)he purpose of this stock redemption is to equalize the investment of stockholders in this corporation.” The only other statement as to the purpose of these redemptions was that the redemption of 240 shares in 1964, the last of the redemptions which occurred, was “in line with the adjustment of capital interest of Mr. O. P. Leleux.” Petitioner maintains on brief that in executing the above redemp-tions he relied upon his legal right, as enunciated in In Re Lukens’’ Estate, supra, to effect a complete redemption of his stock over a period of 6 years without bearing the tax burden of dividend equivalence. However, Ms written protest to the Internal Revenue Service dated September 22, 1965, with regard to the transactions in question does not mention any plan to terminate petitioners’ interest in Gulf Coast. Instead, he took the position at that time that the above redemp-tions were in furtherance of a “partial liquidation and contractions of the business operation,” and indicated that the corporation also intended to redeem a portion of the stock of the other shareholders to this end.[4] Only one other avowed purpose for these redemptions was indicated in the protest. The redemptions occurring in 1963 and 1964 allegedly represented an attempt to shield, for Otis’ benefit, as much of the accumulated earnings as possible from the potential creditors who had incurred losses in the fire of May 15, 1963. The latter contention is fully supported by the evidence of record in this case. Petitioner avers that his purported plan provided for his gradual retirement from business. However, the evidence is not persuasive that at any time during the years before us any such plan existed and at the time of the trial we find that Otis had not relinquished any substantial amount of his authority over the general management of Gulf Coast. Further, he admittedly had made no efforts toward Ms eventual retirement from the other corporation which he controls, Gulf Louisiana, where he performs similar duties. After careful consideration of all the facts of record, we conclude and hold that the redemptions in issue were not executed pursuant to a firm and fixed plan to eliminate petitioner’s interest in Gulf Coast. Hence we must reject the petitioner’s contention that the individual redemptions were merely parts or steps of a single sale or exchange of his entire stock interest.[5] Isidore Himmel, supra. Petitioners having failed to establish by credible or convincing evidence either that the redemptions were not essentially equivalent to dividends or that they were steps or parts of a precise plan to terminate petitioner’s interest as a shareholder and completely redeem all of Ms stock in Gulf Coast, we conclude and hold that the determination of the respondent must be sustained.[6] Decision will be entered for the respondent All section references are to tlie Internal Revenue Code of 1954 unless otherwise stated. Sec. 302 states, In pertinent part, as follows : SEC. 302. DISTRIBUTIONS IN REDEMPTION OP STOCK. (a) General Rule. — If a corporation redeems Its stock (within the meaning of section 317(b)), and if paragraph (1), (2), (⅞), or (4) of subsection (b) applies, such redemption shall be treated as a distribution in part or full payment in exchange for the stock. (b) Redemptions Treated as Exchanges. — ■ (1) Redemptions not equivalent to dividends. — Subsection (a) shall apply if the redemption is not essentially equivalent to a dividend. ******* (3) Termination op shareholder’s interest. — Subsection (a) shall apply if the redemption is in complete redemption of all of the stock of the corporation owned by the shareholder. ****** * (5) Application op paragraphs. — In determining whether a redemption meets the requirements of paragraph (1), the fact that such redemption fails to meet the requirements of paragraph (2), (3), or (4) shall not be taken into account. If a redemption meets the requirements of paragraph (3) and also the requirements of paragraph (1), (2), or (4), then so much of subsection (c) (2) as would (but for this sentence) apply In respect of the acquisition of an interest in the corporation within the 10-year period beginning on the date of the distribution shall not apply. ****** * (d) Redemptions Treated as Distributions op Property.. — Except as otherwise provided in this subchapter, if a corporation redeems its stock (within the meaning of section 317(b)), and if subsection (a) of this section does not apply, such redemption shall be treated as a distribution of property to which section 301 applies. This figure does not include nine shares held by Louise, none of which were ever redeemed. Petitioners’ aggregate interest represents 53.5 percent of the outstanding stock. Petitioners have since conceded that no partial liquidation in fact occurred. The respondent also argued that the redemptions in issue could not be considered “in complete redemption” of Otis’ stock within the meaning of sec. 302(b) (3) since petitioner had not completely eliminated his interest at the time of the trial. In view of our finding that the redemptions were not executed pursuant to a firm and fixed plan for the elimination of petitioner’s interest, we do not find it necessary to consider whether subsee. (b) (3) applies only where complete termination has in fact occurred. No issue has been raised with respect to the amount of accumulated earnings and profits in each of the years before us and petitioners have presented no evidence to establish that they were not equal at least to the amounts determined by respondent as dividend equivalents in each year.