Blanche S. BENJAMIN et al.,
Petitioners-Appellants,

v.

COMMISSIONER OF INTERNAL
REVENUE, Respondent-Appellee.

No. 77–2276.

United States Court of Appeals,
Fifth Circuit.

April 10, 1979.

William C. Gambel, New Orleans, La., for petitioners-appellants.

Gilbert E. Andrews, Acting Chief, Appellate Section, M. Carr Ferguson, Asst. Atty. Gen., Gary R. Allen, Atty., William S. Estabrook, III, Tax Div., Dept. of Justice, Washington, D.C., for respondent-appellee.

Before GEWIN, HILL and FAY, Circuit Judges.

FAY, Circuit Judge:

Respondent determined deficiencies in petitioners' federal income taxes. From an

adverse decision in the Tax Court, petitioners appeal.

The facts of this case are painstakingly set out in the Tax Court opinion and are therefore only briefly set forth below. *Benjamin v. Commissioner of Internal Revenue*, 66 T.C. 1084, 1086–96 (1976).

Starmount Corporation, a North Carolina corporation, owned between 3,000 and 4,000 acres of land in North Carolina. Prior to the 1964 redemption here at issue, Starmount's outstanding stock consisted of 4,732 shares of Class A preferred, 7,255 shares of Class B preferred, 3,518 shares of Class C preferred, and 1,000 shares of common stock. Voting and management control of Starmount Corp. was vested entirely in the Class A and Class B preferred stock, all of which was owned by petitioner Blanche S. Benjamin. Her children and grandchildren owned all of the common stock and 2,550 shares of the Class C preferred.

The capital structure of the corporation was the result of a 1950 agreement between Mr. and Mrs. Benjamin and their children. Mrs. Benjamin, in need of cash, agreed to a capital restructuring of Starmount Corporation in return for her children's consent in terminating certain trusts which she had created and in which the children had vested future interests. Paragraph No. 4 of the 1950 agreement embodied these changes.[1] In paragraph No. 4, Mrs. Benjamin agreed to amend Starmount's Articles of Incorporation so that voting and management rights of the company would be vested in the Class A and Class B preferred stock so long as any of those classes of stock remained outstanding. In addition, Mrs. Benjamin agreed to transfer all of the common stock of Starmount to her children in equal shares as gifts. The provision most pertinent to this appeal provided that once Blanche Benjamin realized one hundred dollars per share on each and all of her shares of A & B preferred stock, she would transfer any of her remaining shares in Starmount to her children.

Thus, the economic interest of Blanche Benjamin in Starmount Corporation was limited to approximately $1,200,000 or $100 per share. As soon as she realized that amount, she was bound by the 1950 agreement to terminate her interest in the Corporation.

1.  Paragraph No. 4 reads:

    4. Blanche Sternberger Benjamin agrees promptly to cause the Certificate of Incorporation of the Starmount Company to be amended so that all of the voting and management rights of the company will be vested solely in the Class A preferred stock and the Class B preferred stock, so long as any of said stock remains issued and outstanding, and thereafter in the class C preferred stock and the common stock of the company with provision that the company shall not be dissolved or its charter further amended, except upon a majority vote of each of the several classes of stock of the company separately voting by class, including the Class C preferred stock and the common stock, as well as the Class A preferred stock and the Class B preferred stock. Blanche Sternberger Benjamin further agrees that, forthwith after such amendment of the Certificate of Incorporation, she will transfer all of the common stock of said company to the parties of the first part [the sons] in equal shares as gifts. Blanche Sternberger Benjamin further agrees that after she has realized during her lifetime One Hundred Dollars ($100.) per share on each and all of the now issued and outstanding shares of the Class A preferred stock and the Class B preferred stock of Starmount Company, whether due to distributions of capital or income of said company, she will donate and transfer any then remaining Class A preferred stock and Class B preferred stock and all of the Class C preferred stock of said company to the parties of the first part, their personal representatives or assigns in equal shares, except that she shall be free to donate and transfer all or any part of any class of said stock held by her to the parties of the first part, their personal representatives or assigns in equal shares at any time in the meantime. Gift taxes, if any, assessable in respect of any such transfer of such stock shall be borne by said Blanche Sternberger Benjamin. Blanche Sternberger Benjamin further agrees that until after she has donated and transferred all of the Class C preferred stock of said company to the parties of the first part, their personal representatives or assigns, she will keep in force a Last Will and Testament containing a bequest of all the Class C preferred stock of said company owned by her at the time of her death to the parties of the first part, their personal representatives or assigns in equal shares.

On December 9, 1964, Starmount redeemed 2,000 shares of the Class A voting preferred stock held by Blanche Benjamin for $200,000.[2] In 1968, Starmount redeemed all of the remaining preferred stock held by Mrs. Benjamin. This appeal concerns the tax treatment accorded the 1964 redemption by Blanche Benjamin.

■■■ As to the issues of dividend equivalency under Code Section 302(b)(1) and invalid record inspection under Section 7605(b), we affirm on the basis of the Tax Court's opinion.[3] In this opinion, we limit our discussion to petitioner's assertions that the 1964 redemption was one of a series of redemptions, the result of which would have been a complete termination of Mrs. Benjamin's interest, thus qualifying the distribution for capital gains treatment. *See In Re Luken's Estate*, 246 F.2d 403 (3d Cir. 1957) *rev'g* 26 T.C. 900 (1956); *Jackson Howell*, 26 T.C. 846 (1956) *aff'd. sub nom. Phelps v. Commissioner*, 247 F.2d 156 (9th Cir. 1957).

In order to avoid dividend equivalency where several redemptions are part of a plan to terminate a shareholder's stock interest, the terms of the plan must be firm and fixed and the steps clearly integrated. *Niedermeyer v. Commissioner of Internal Revenue*, 62 T.C. 280, 291 (1974) *aff'd.* 535 F.2d 500 (9th Cir. 1976). Petitioners assert that the 1950 agreement coupled with their obligation to retire the stock as soon as possible constitutes such a firmly fixed plan.

2. The $200,000.00 was not paid to Blanche Benjamin in cash. Rather, the money was applied to two separate accounts of the Corporation, representing money owed to the Corporation by taxpayers. Their debt to the Corporation was the result of funds previously distributed as interest free loans.

3. The factor which we find most persuasive is the element of corporate control. Both before and after the 1964 redemption, Blanche Benjamin owned all of the voting stock of Starmount. While her equity interest was diminished after the redemption due to the 1950 agreement, she still had the formidable power of controlling the business enterprises of the corporation, determining directions of corporate expansion and growth, as well as controlling the timing of the redemption of her own shares of stock. Although the Benjamins con-

Although we do not mean to indicate that exact dates are necessary in order to qualify for a planned step redemption, the total absence of any time framework, coupled with the wide discretion in determining when the redemption was possible, vested in the taxpayers as directors of Starmount, lead us to believe that this plan constituted an "afterthought rather than prearrangement." *Otis P. Leleux*, 54 T.C. 408, 418 (1970). The almost unchallenged discretion over corporate expansion and expenditures exercised by these taxpayers only serve to fuel our conclusion.

AFFIRMED.

tend that they were under a fiduciary duty to retire the stock as soon as possible, they concede, as they must, that they are vested, as corporate directors, with wide discretion in determining when the redemption was possible. We note that several years prior to the 1964 redemption of her stock, Starmount undertook the development of a shopping center, requiring a cash outlay by Starmount of at least $1.4 million. Rather than using that money to redeem her stock, the Board of Directors (comprised of Mr. and Mrs. Benjamin and a North Carolina attorney) decided to proceed with development of the shopping center. It is precisely this type of control which leads us to reject petitioners argument that there has been a "meaningful reduction" in Mrs. Benjamin's interest in Starmount.