*Decision will be entered under Rule 155.*

BLEILY & COLLISHAW, INC., A CORPORATION, PETITIONER v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3876–76.     Filed August 3, 1979.

---

*Robert J. Williams,* for the petitioner.
*Thomas F. Kelly,* for the respondent.

IRWIN, *Judge:* Respondent determined a deficiency of $6,573 in petitioner's income tax for the taxable year 1973.

The only issue in this case is whether redemptions by Maxdon Construction, Inc. (Maxdon), of its stock held by petitioner constituted dividends taxable as ordinary income under sections 301[1] and 316 or constituted distributions in exchange for its stock pursuant to section 302 and, therefore, taxable as capital gains.

## FINDINGS OF FACT

Some of the facts have been stipulated. The stipulation of facts together with the exhibits attached thereto are incorporated herein by this reference.

Petitioner Bleily & Collishaw, Inc. (B & C), is a California corporation which was originally engaged in the construction business but gradually became a landholding company. At the time its petition herein was filed, its principal place of business was Santa Clara, Calif. Petitioner filed its 1973 Federal income tax return with the District Director of Internal Revenue for the Northern District of California. Ray Collishaw is B & C's president and owns all its shares.

In 1969, B & C bought 225 shares of Maxdon's stock. Maxdon's remaining 525 shares were held by its president, Donald J. Neumann. In 1969, a close business relationship existed between

---

[1]All statutory references are to the Internal Revenue Code of 1954, as in effect during the years at issue.

B & C and Maxdon and Maxdon did subcontracting for B & C. As B & C stopped its contracting work, however, it no longer had any use for Maxdon's subcontracting work. Since Neumann felt there was no advantage to Maxdon in B & C's continuing ownership of its stock, he wanted sole control and ownership of Maxdon.

Sometime prior to August 17, 1973, Neumann met with Collishaw to discuss the purchase of B & C's shares. Collishaw agreed to sell all of B & C's Maxdon stock at $200 per share and was willing to do so at that time. However, because Neumann had problems obtaining enough cash for an immediate purchase of all B & C's Maxdon stock, he offered to buy only a portion of the stock. Nonetheless, Collishaw intended at all times to sell the shares if and when Neumann offered to buy them, although he was not under any contractual or legal obligation to do so.

Neumann expected to, and in fact did, receive or earn enough money every month to make additional purchases of stock. Each month prior to each transaction, Collishaw contacted his accountant who then determined the proper number of shares to be redeemed that month. Each sale was supported by a separate written redemption agreement executed by Maxdon and B & C providing a redemption price of $200 per share and reciting the number of shares Maxdon then had outstanding, the number then owned by B & C, and the number of shares B & C was to sell. Maxdon redeemed all of B & C's stock during the 23-week period August 17, 1973—February 22, 1974, thereby terminating B & C's interest in Maxdon. The details regarding these redemptions are shown on the table on page 755 .

During 1973, Maxdon redeemed a total of 166 shares of stock for a total of $33,200. Petitioner claimed this amount on its 1973 corporate income tax return as a dividend, subject to the 85-percent deduction allowed by section 243. Respondent determined that the redemptions constituted an exchange of stock, thereby taxing the redemptions as capital gains.

## OPINION

The issue before us is whether section 302(b)[2] applies to the

---

[2]SEC. 302. DISTRIBUTIONS IN REDEMPTION OF STOCK.

(a) GENERAL RULE.—If a corporation redeems its stock (within the meaning of section 317(b)), and if paragraph (1), (2), (3), or (4) of subsection (b) applies, such redemption shall be treated as a distribution in part or full payment in exchange for the stock.

redemptions, thereby taxing the transaction under section 302(a). If section 302(a) does not apply, then the redemptions are taxable under sections 301 and 316 as dividends.[3]

Respondent and petitioner both agree that section 302(b)(4) (dealing with certain stock issued by railroads) does not apply here. Respondent contends that sections 302(b)(1), 302(b)(2), and 202(b)(3) all apply whereas petitioner contends that none of these sections apply.

We deal first with section 302(b)(3). For section 302(b)(3) to

---

(b) REDEMPTIONS TREATED AS EXCHANGES.—

(1) REDEMPTIONS NOT EQUIVALENT TO DIVIDENDS.—Subsection (a) shall apply if the redemption is not essentially equivalent to a dividend.

(2) SUBSTANTIALLY DISPROPORTIONATE REDEMPTION OF STOCK.—

(A) IN GENERAL.—Subsection (a) shall apply if the distribution is substantially disproportionate with respect to the shareholder.

(B) LIMITATION.—This paragraph shall not apply unless immediately after the redemption the shareholder owns less than 50 percent of the total combined voting power of all classes of stock entitled to vote.

(C) DEFINITIONS.—For purposes of this paragraph, the distribution is substantially disproportionate if—

(i) the ratio which the voting stock of the corporation owned by the shareholder immediately after the redemption bears to all of the voting stock of the corporation at such time,

is less than 80 percent of—

(ii) the ratio which the voting stock of the corporation owned by the shareholder immediately before the redemption bears to all of the voting stock of the corporation at such time.

For purposes of this paragraph, no distribution shall be treated as substantially disproportionate unless the shareholder's ownership of the common stock of the corporation (whether voting or nonvoting) after and before redemption also meets the 80 percent requirement of the preceding sentence. For purposes of the preceding sentence, if there is more than one class of common stock, the determinations shall be made by reference to fair market value.

(D) SERIES OF REDEMPTIONS.—This paragraph shall not apply to any redemption made pursuant to a plan the purpose or effect of which is a series of redemptions resulting in a distribution which (in the aggregate) is not substantially disproportionate with respect to the shareholder.

(3) TERMINATION OF SHAREHOLDER'S INTEREST.—Subsection (a) shall apply if the redemption is in complete redemption of all of the stock of the corporation owned by the shareholder.

(4) STOCK ISSUED BY RAILROAD CORPORATIONS IN CERTAIN REORGANIZATIONS.—Subsection (a) shall apply if the redemption is of stock issued by a railroad corporation (as defined in section 77(m) of the Bankruptcy Act, as amended) pursuant to a plan of reorganization under section 77 of the Bankruptcy Act.

(5) APPLICATION OF PARAGRAPHS.—In determining whether a redemption meets the requirements of paragraph (1), the fact that such redemption fails to meet the requirements of paragraph (2), (3), or (4) shall not be taken into account. If a redemption meets the requirements of paragraph (3) and also the requirements of paragraph (1), (2), or (4), then so much of subsection (c)(2) as would (but for this sentence) apply in respect of the acquisition of an interest in the corporation within the 10-year period beginning on the date of the distribution shall not apply.

[3]Under sec. 243(a)(1), B & C is allowed a deduction of 85 percent of the amount received as dividends, if any, from Maxdon. Because of this, it is to petitioner's tax advantage for these amounts to be treated as ordinary income, rather than as capital gains. It is undisputed that Maxdon had sufficient earnings and profits available for each redemption to qualify as a dividend under sec. 316.

| Date of redemption | Shares of Maxdon construction held by Bleily & Collishaw, Inc. | | | Outstanding shares of common stock of Maxdon Construction, Inc. | | | Shares of Maxdon held by B & C |
|---|---|---|---|---|---|---|---|
| | Total | Shares redeemed | Shares remaining | Shares outstanding | Shares redeemed | Net shares outstanding | Ratio of stock held before redemption |
| 8/17/73 | 225 | 59 | 166 | 750 | 59 | 691 | 30.00 |
| 9/23/73 | 166 | 41 | 125 | 691 | 41 | 650 | 24.02 |
| 10/19/73 | 125 | 29 | 96 | 650 | 29 | 621 | 19.23 |
| 11/23/73 | 96 | 21 | 75 | 621 | 21 | 600 | 15.46 |
| 12/21/73 | 75 | 16 | 59 | 600 | 16 | 584 | 12.50 |
| 1/18/74 | 59 | 12 | 47 | 584 | 12 | 572 | 10.10 |
| 2/22/74 | 47 | 47 | 0 | 572 | 47 | 525 | 8.22 |
| | | 225 | | | 225 | | |

apply, there must be a complete redemption of all of the stock owned by a shareholder. Where several redemptions have been executed pursuant to a plan to terminate a shareholder's interest, the individual redemptions constitute, in substance, the component parts of a single sale or exchange of the entire stock interest. We have refused, however, to treat a series of redemptions as a single plan unless the redemptions are pursuant to a firm and fixed plan to eliminate the stockholder from the corporation. *Benjamin v. Commissioner*, 66 T.C. 1084 (1976), affd. 592 F.2d 1259 (5th Cir. 1979); *Niedermeyer v. Commissioner*, 62 T.C. 280, 291 (1974), affd. 535 F.2d 500 (9th Cir. 1976), cert. denied 429 U.S. 1000; *Leleux v. Commissioner*, 54 T.C. 408, 418 (1970); *Himmel v. Commissioner*, 41 T.C. 62 (1963), revd. on other grounds 338 F.2d 815 (2d Cir. 1964). See also *Estate of Luken v. Commissioner*, 246 F.2d 403 (3d Cir. 1957), revg. 26 T.C. 900 (1956); *Howell v. Commissioner*, 26 T.C. 846 (1956), affd. sub nom. *Phelps v. Commissioner*, 247 F.2d 156 (9th Cir. 1957).

Generally, a gentleman's agreement lacking written embodiment, communication, and contractual obligations will not suffice to show a fixed and firm plan. *Leleux v. Commissioner, supra.*[4] On the other hand, a plan need not be in writing, absolutely binding, or communicated to others to be fixed and firm although these factors all tend to indicate that such is the case. *Niedermeyer v. Commissioner, supra.*

Each case is necessarily a factual determination and based upon the record we are convinced Maxdon planned to eliminate B & C as a shareholder. The initiative for the redemption came from Neumann, not Collishaw. It is undisputed that Neumann wanted sole ownership of Maxdon and desired to buy B & C's interest as fast as his cash position would allow. It was only because Neumann did not have enough cash for an immediate purchase that B & C's entire block of Maxdon stock was not purchased on August 17, 1972. As Neumann obtained cash he made purchases every month for 6 consecutive months of a number of shares[5] until B & C's interest was liquidated.

---

[4] See also *Lisle v. Commissioner*, T.C. Memo. 1976–140.

[5] It seems that the precise amount of shares to be redeemed each month was agreed upon by both parties at least in part to avoid the 80-percent test of sec. 302(b)(2):

|  | (i) Ratio that B & C's (voting) stock in Maxdon immediately after the redemption bears to all voting stock at such time | (ii) Ratio that B & C's (voting) stock in Maxdon immediately before the redemption bears to all voting stock at such time | 80% of (ii) |
|---|---|---|---|
| 8/17/73 | 24.02 | 30.00 | 24.00 |
| 9/23/73 | 19.23 | 24.02 | 19.21 |

Collishaw had agreed to the sale of all its shares and to the purchase price. As noted before, the fact that the agreement was not binding is not dispositive. Cf. *Himmel v. Commissioner, supra* (no fixed plan where the agreement read that so long as petitioner lives the corporation may redeem his preferred shares at par, provided that it is "financially able to redeem same," if its other shareholders desire that this be done), and *Benjamin v. Commissioner, supra* ("vague anticipation is not a firm plan with fixed conditions"). Here, both shareholders agreed to the redemption, and Maxdon planned to purchase B & C's Maxdon stock over the course of a few months as funds became available.

Because we have found that there was an integrated plan, we do not need to determine whether each redemption considered separately meets the "essentially equivalent to a dividend test" under section 302(b)(1), or whether section 302(b)(2) applies to the redemption.[6]

*Decision will be entered for the respondent.*

| | | | |
|---|---|---|---|
| 10/19/73 | 15.46 | 19.23 | 15.38 |
| 11/23/73 | 12.50 | 15.46 | 12.36 |
| 12/21/73 | 10.10 | 12.50 | 10.00 |
| 1/18/74 | 8.22 | 10.10 | 8.08 |
| 2/22/74 | --- | 8.22 | --- |

[6]It is clear that no individual redemption meets the "substantially disproportionate" test of sec. 302(b)(2); it is respondent's position that the redemptions must be considered together, thereby meeting that test.