OLIVER H. LETTMANN and ETHEL V. LETTMANN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Lettmann v. Commissioner
Docket No. 6176-79.
United States Tax Court
T.C. Memo 1982-511; 1982 Tax Ct. Memo LEXIS 236; 44 T.C.M. (CCH) 1050; T.C.M. (RIA) 82511; September 9, 1982. Townes L. Dawson, for the petitioners. Daniel J. Wiles, for the respondent. WILES
MEMORANDUM FINDINGS OF FACT AND OPINION WILES, Judge: Respondent determined the following deficiencies in petitioners' Federal income tax: Year
Deficiency
1974
$4,409.84
1975
4,517.66
1976
4,203.23
1977
5,531.04
After concessions, the sole issue for decision is whether the redemption by O.H. Lettmann Contractors, Inc., of its stock from petitioner constituted dividends taxable as ordinary income under sections 301[1] and 316. *238 FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Oliver H. Lettmann (hereinafter petitioner) and Ethel V. Lettmann, husband and wife, resided in Ormond Beach, Florida, when they filed their petition in this case. In 1961, petitioner started a petroleum equipment installation and maintenance business which he operated as a sole proprietorship until 1963. In 1963, petitioner incorporated this sole proprietorship, naming the corporation O.H. Lettmann Contractors, Inc. (hereinafter sometimes referred to as Lettmann, Inc., or the corporation). Upon the incorporation, petitioner received 1,000 shares of Lettmann, Inc.'s stock in exchange for $1,000. During the years in issue, all of the corporation's outstanding stock was held by petitioner. From 1963 until sometime subsequent to 1977, petitioner served as president and chairman of the board of directors of Lettmann, Inc., while his wife served as the corporation's secretary and treasurer, and one of its directors. On July 14, 1971, Lettmann, Inc., held a special board of directors and stockholders meeting. The meeting was attended by petitioner, petitioner's wife, and two other directors *239 of the corporation, Eugene Borders (hereinafter Borders) and Nancy Ford. At that meeting, Borders made a motion that the corporation "purchase all of the outstanding and issued shares of stock now held by O. H. Lettmann on installment payments." The motion was approved unanimously. In addition, Kenneth L. Lucas (hereinafter Lucas) was elected vice president of the corporation at the meeting. Lucas, however, did not attend that meeting and he played no part in the decision to have the corporation "purchase" petitioner's stock. On July 23, 1971, Lettmann, Inc., entered into an agreement (hereinafter sometimes referred to as the redemption contract) with petitioner, pursuant to the authorization of the board of directors, which provided for the corporation's purchase of petitioner's stock over a period of 78 months, commencing on August 1, 1971. The redemption contract provided, inter alia, that Lettmann, Inc., or Lucas would make 78 monthly payments of $2,000 to petitioner and after every 12 payments petitioner would "release" 154 shares of the corporation's stock to the corporation, with a final transfer of 76 shares for the last 6 months of payments. Furthermore, the agreement *240 provided that petitioner and his wife would remain as chairman of the board of directors and secretary-treasurer of the Board, respectively, until petitioner's stock was purchased in total by Lettmann, Inc., or Lucas. The redemption contract was signed by petitioner and by Lucas, the latter signing on behalf of the corporation. Beginning on August 1, 1971, and monthly thereafter, throughout the years in issue, Lettmann, Inc., issued checks to petitioner in the amounts of $2,000 each. In exchange for those payments, petitioner would send the following letter to Lettmann, Inc.'s board of directors in July of each year through 1977: I, Oliver H. Lettmann, do hereby and hereon by authority of this letter, release and relinquish one hundred fifty-four (154) shares of Capital stock of O.H. Lettmann, Contractor, Inc. to the Corporation of O.H. Lettmann, Contractor, Inc. for payment of twelve (12) equal payments of Two Thousand ($2,000.00) dollars over the past twelve months * * *. Notwithstanding these releases, however, Lettmann, Inc.'s books and records through December 31, 1977, show that petitioner still owned 1,000 shares of stock in the corporation with a basis of $1,000. On *241 January 4, 1978, petitioner wrote a letter to Lettmann, Inc., in which he stated that he was releasing and relinquishing the remaining shares that he owned in the corporation. The releases which petitioner executed in exchange for the monthly payments from Lettmann, Inc., stated that the corporation's ownership of its stock gradually increased as follows: Tresury Shares
Percentage of Outstanding
Shares Owned
Held By The
Shares Owned
Year
By Petitioner
Corporation
By Petitioner
Dec. 31, 1972
846
154
100%
Dec. 31, 1973
692
308
100%
Dec. 31, 1974 a
538
462
100%
Dec. 31, 1975 a
384
616
100%
Dec. 31, 1976 a
230
770
100%
Dec. 31, 1977 a
76
924
100%
Jan. 4, 1978
0
1,000
0%
At no time did petitioner release his shares in the corporation to any person other than the corporation, and at no time did Lucas or any other individual purchase any of the corporation's stock from petitioner. Notwithstanding petitioner's releases, he continued to preside over all of the corporation's annual meetings during *242 the years in issue. On petitioner's Federal income tax returns for the years at issue, he treated the redemption contract which he entered into with his wholly owned corporation on July 23, 1971, as a sale of his stock for cash, and he reported such sale on the installment basis pursuant to section 453. Due to the fact that petitioner had held the corporation's stock since 1963, he reported his profit on the sale as long-term capital gain. In the notice of deficiency, respondent determined that the amounts which petitioner received from his wholly owned corporation, Lettmann, Inc., in redemption of his stock constitutes dividend income under sections 301 and 316 instead of long-term capital gain. During each of the years at issue, Lettmann, Inc. had sufficient earnings and profits so as to make any dividend distributions to petitioner, its sole shareholder, taxable as ordinary income under sections 301 and 316. OPINION We must determine whether Lettmann, Inc.'s payments to petitioner in exchange for petitioner's release of his shares in the corporation's stock was a redemption governed by section 302(a). When a corporation makes a distribution of property to its shareholders, *243 the tax treatment is generally governed by sections 301 and 316. If the corporation has sufficient earnings and profits, the distribution is includable in the distributee's gross income and is taxable as a dividend. The characteristics of a dividend are a pro rata distribution of earnings and profits and no change in basic shareholder relationships. Benjamin v. Commissioner,66 T.C. 1084, 1103 (1976), affd. 592 F. 2d 1259 (5th Cir. 1979). An exception to this general pattern is set forth in section 302(a), which provides that if a corporation redeems its stock and if certain tests contained in section 302(b) are met, then the redemption shall be treated as an exchange. [2] By providing exchange treatment for redemptions which meet any of the tests set forth in section 302(b), section 302(a) enables such redemptions to be taxed at capital gains rates. *244 Petitioner argues that the redemption contract which he entered into with Lettmann, Inc., on July 23, 1971, evidenced a firm and fixed plan which resulted in the complete termination of his interest in the corporation within the meaning of section 302(b)(3). Respondent, on the other hand, maintains that petitioner has not established that redemption contract which petitioner entered into with his corporation terminated petitioner's interest therein within the meaning of section 302(b)(3). For reasons set forth below, we agree with and hold for respondent. Pursuant to the redemption contract which petitioner entered into with Lettmann, Inc., he received monthly payments of $2,000 in exchange for his stock in the corporation. Lettmann, Inc., made these payments continuously from August 1, 1971 through January 1, 1978. It was not until January 4, 1978, a year not presently before us, that petitioner relinquished his remaining 76 shares to Lettmann, Inc. Prior to 1978, however, petitioner was clearly the sole stockholder of Lettmann, Inc., as well as its president and chairman of the board. The redemptions which occurred during 1974 through 1977, the years in issue, did not result *245 in any change whatsoever in petitioner's percentage of stock ownership. During those years, petitioner owned 100 percent of Lettmann, Inc., and served as the corporation's president and chairman of the board. Consequently, we think that the $24,000 per year which petitioner received from Lettmann, Inc., during the years in issue in exchange for a number of his shares was essentially equivalent to a dividend. See United States v. Davis,397 U.S. 301 (1970). Sec. 302(b)(1). Since Lettmann, Inc., had earnings and profits at least equal to the amounts distributed to petitioner during the years in issue, the distributions are includable in petitioner's gross income and taxable as dividends. Secs. 301, 316. Petitioner argues that we should consider the redemption as several parts of a single plan which resulted in the termination of his interest in Lettmann, Inc., on January 4, 1978. In order for us to consider all of the payments, and their effect, together, petitioner must prove that each redemption was an integral part of a firm and fixed plan to totally divest him of any interest in the corporation. Niedermeyer v. Commissioner,62 T.C. 280, 291 (1974), *246 affd. 535 F. 2d 500 (9th Cir. 1976), cert. denied 429 U.S. 1000 (1976); Benjamin v. Commissioner,supra;Roebling v. Commissioner,77 T.C. 30 (1981); Johnston v. Commissioner,77 T.C. 679 (1981). On the record before us, however, we find that petitioner has not met his burden of proof. The sole plan advanced by petitioner is that of the redemption contract executed by petitioner and Lettmann, Inc., on July 23, 1971. Nothing in the record shows that Lucas purchased any of the shares in Lettmann, Inc., from petitioner or the corporation at any time before, during, or after the years in issue. Lettmann, Inc., was authorized to enter into the redemption contract by petitioner, the sole stockholder, and the corporation's board of directors, of which petitioner was chairman. Throughout the redemption period, petitioner remained in control of Lettmann, Inc. His 1,000 shares in the corporation were not placed in escrow during the redemption period and the books of the corporation through 1977 reflected that petitioner was the owner of the entire 1,000 shares. In light of these facts, we find that petitioner *247 has not established that he intended to relinquish control over the corporation at the time that he entered into the redemption contract or at any time during the years in issue. Consequently, we uphold respondent's determination. To reflect the foregoing, Decision will be entered for the respondent.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended.↩
a. Petitioner received $24,000 per year from Lettmann, Inc., during each of the years at issue in exchange for the releases.↩
2. Sections 302(a) and 302(b) state, in pertinent part, as follows: (a) General Rule.--If a corporation redeems its stock (within the meaning of section 317(b)), and if paragraph (1), (2), (3), or (4) of subsection (b) applies, such redemption shall be treated as a distribution in part or full payment in exchange for the stock. (b) Redemptions Treated as Exchanges.-- (1) Redemptions not equivalent to dividends.--Subsection (a) shall apply if the redemption is not essentially equivalent to a dividend. (3) Termination of shareholder's interest.--Subsection (a) shall apply if the redemption is in complete redemption of all of the stock of the corporation owned by the shareholder. (5) Application of paragraphs.--In determining whether a redemption meets the requirements of paragraph (1), the fact that such redemption fails to meet the requirements of paragraph (2), (3), or (4) shall not be taken into account. If a redemption meets the requirements of paragraph (3) and also the requirements of paragraph (1), (2), or (4), then so much of subsection (c)(2) as would (but for this sentence) apply in respect of the acquisition of an interest in the corporation within the 10-year period beginning on the date of the distribution shall not apply.↩